Jonathan Gross, State Bar No. 122010
jgross@moundcotton.com
Jaime Ritton, State Bar No. 303483
jritton@moundcotton.com
MOUND COTTON WOLLAN & GREENGRASS LLP
2200 Powell Street, Suite 1050
Emeryville, California 94608
Telephone: (510) 900-9371
Facsimile: (510) 900-9381

Attorneys for Plaintiffs
ZURICH AMERICAN INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY and
GREAT AMERICAN INSURANCE COMPANY

THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>CHEVRON U.S.A. INC. d/b/a Chevron Products Company and CHEVRON CORPORATION,<br><br>Defendants. | Case No.<br><br>**ZURICH AMERICAN INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY AND GREAT AMERICAN INSURANCE COMPANY'S COMPLAINT** |

Plaintiffs Zurich American Insurance Company, Liberty Mutual Insurance Company and Great American Insurance Company, as and for their Complaint against Defendant Chevron U.S.A. Inc. d/b/a Chevron Products Company and Defendant Chevron Corporation, allege upon knowledge as to their own acts and upon information and belief as to all other matters, as follows:

1.  This is an insurance coverage dispute under two, separate first-party policies of insurance.

2.  Plaintiffs Zurich American Insurance Company, Liberty Mutual Insurance Company and Great American Insurance Company (collectively, "Plaintiffs" or "Underwriters") severally

insure Defendant Chevron U.S.A. Inc. d/b/a Chevron Products Company ("Chevron U.S.A.") and Defendant Chevron Corporation ("Chevron Corporation") under the terms and conditions of Marine Cargo Policy No. MMSF-23-5033 (the "Marine Cargo Policy").

3. Underwriters also severally insure Chevron U.S.A. and Chevron Corporation under the terms and conditions of War Risks Policy No. MMSF-23-5033 (the "War Risks Policy").

4. The War Risks Policy is a separate and wholly independent contract of marine insurance from the Marine Cargo Policy.

5. The insurance claim that is the subject of this action is described in the Proof of Loss submitted to Underwriters by Chevron U.S.A. as arising out of "the seizure of the *Advantage Sweet* vessel and her cargo in April 2023 by the Iranian military and the subsequent unloading and expropriation from the vessel of approximately $51 million of Chevron [ U.S.A.'s] crude [oil]."

6. The Proof of Loss asserts that the seizure of the ADVANTAGE SWEET and Chevron U.S.A.'s cargo of crude oil on board the vessel was "a direct retaliation against international sanctions against Iran by the United States, including but not limited to the U.S. government's [earlier] seizure (and later sale of) Iranian crude oil aboard the *Suez Rajan*," a different vessel.

7. By this action, Underwriters seek a judgment declaring that there is no coverage under either the Marine Cargo Policy or the War Risks Policy for the claimed loss of Chevron U.S.A.'s crude oil.

8. Coverage for the claimed loss under the Marine Cargo Policy is excluded by a policy provision under which Chevron U.S.A. warrants that the insurance is "free from loss, damage or expense caused by or resulting from … capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt threat, whether in time of peace or war and whether lawful or otherwise."

9. The claimed loss does not fall within the insuring terms of the War Risks Policy. The seizure of the crude oil and its later expropriation by Iran do not constitute "warlike operations" and were not "in prosecution of hostilities or in the application of sanctions under international agreements," as those terms are used in the insuring terms of the War Risks Policy. Furthermore, Iranian authorities were not acting for the public welfare to prevent or mitigate a pollution hazard or

threat thereof when they seized the crude oil and later expropriated it.

10. Even assuming, *arguendo*, that the claimed loss did fall within the insuring terms of the War Risks Policy, which is denied, coverage would be excluded by a policy provision under which the insurance is "[w]arranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments."

## PARTIES

11. Plaintiffs are American insurance companies that offer, among other coverages, marine cargo insurance and war risks insurance subject to the terms and conditions of the policies of insurance.

12. Chevron U.S.A. is incorporated in the Commonwealth of Pennsylvania and has a principal place of business in San Ramon, California located in Contra Costa County, California.

13. "Chevron Products Company" is registered as a fictious name of Chevron U.S.A.

14. Chevron U.S.A. does business as Chevron Products Company.

15. Chevron Products Company is a division of Chevron U.S.A., not a separate company.

16. Chevron Corporation is incorporated in the State of Delaware and has a principal place of business in San Ramon, California located in Contra Costa County, California.

17. Chevron U.S.A. is a wholly owned, indirect subsidiary of Chevron Corporation, and they are collectively referred to herein as "Chevron."

## JURISDICTION AND VENUE

18. The Marine Cargo Policy is a maritime contract.

19. The War Risks Policy is a maritime contract.

20. The following issues constitute questions of insurance coverage under contracts of marine insurance and thereby come within the admiralty and maritime jurisdiction of this Court pursuant to 28 U.S.C. § 1333 and are admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

21. This action is filed under and pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

22. An actual controversy of a justiciable nature exists between Plaintiffs and Defendants

involving the rights and obligations under contracts of marine insurance and, depending on the construction of said contracts, the aforesaid controversy can be determined by a judgment of this Court without further suit.

23. Chevron U.S.A. is subject to personal jurisdiction in the State of California and in this Court by virtue of its having a principal place of business in San Ramon, California and being "at home" in this District.

24. Chevron Corporation is subject to personal jurisdiction in the State of California and in this Court by virtue of its having a principal place of business in San Ramon, California and being "at home" in this District.

25. Venue is proper in this District because each Defendant is subject to personal jurisdiction in this District.

## UNDERLYING FACTS – THE MARINE CARGO POLICY

26. Underwriters, on a subscription basis, severally insure Chevron under the terms and conditions of Marine Cargo Policy No. MMSF-23-5033. A true and correct copy of the Marine Cargo Policy is attached hereto as Exhibit 1 and is incorporated herein by reference.

27. Underwriters subscribe, severally and not jointly, to the Marine Cargo Policy on the following basis: Zurich at a 40% participation; Liberty at a 40% participation; and Great American at a 20% participation.

28. The policy period of the Marine Cargo Policy ran from April 1, 2023 to April 1, 2024.

29. Among the terms and conditions of the Marine Cargo Policy is a clause that states, in relevant part:

> 1. THE INSURED:
> CHEVRON CORPORATION and/or CHEVRON ORONITE, and/or its subsidiaries, now or heretofore or hereafter acquired, and/or its interest in affiliates, and/or any other party to the extent that Chevron Corporation and/or its subsidiaries (other than insurance subsidiaries) have agreed to assume the liability of/or arrange coverage for such party prior to loss.
>
> Address: 6001 Bollinger Canyon Road, San Ramon, CA 94583
> USA

30. Among the terms and conditions of the Marine Cargo Policy is a clause that states, in relevant part:

> 9. LIMITS OF LIABILITY:
>
> 9.1 The Insurer shall not be liable under this policy for more than "As Per Declarations" per any one conveyance or connecting conveyance, at any one place at any one time.

31. The Declaration Page to the Marine Cargo Policy, in turn, provides that the Limits of Liability are "USD50,000,000 any one vessel or connecting conveyance."

32. Among the terms and conditions of the Marine Cargo Policy is a clause that states, in relevant part:

> 10. CONDITIONS OF COVERAGE:
>
> 10.1 Unless otherwise specified herein, all goods, merchandise and property are insured:
>
> Against all risks of physical loss or damage from any external cause, except those risks as may be excluded by the warranties or exclusions specified in this policy, but always subject to the conditions of coverage specified below in this clause.

33. Among the terms and conditions of the Marine Cargo Policy is a clause that states, in relevant part:

> 17. PARAMOUNT WARRANTIES:
>
> The following warranties and clause shall be paramount and apply except to the extent they may be amended or replaced by superseding clause(s) or endorsement(s).
>
> 17.1 FREE OF CAPTURE AND SEIZURE WARRANTY:
>
> This insurance is warranted free from loss, damage or expense caused by or resulting from:
>
> (i) capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any

attempt threat, whether in time of peace or war and whether lawful or otherwise[.]

(the "FC&S Warranty").

34. Among the terms and conditions of the Marine Cargo Policy is a clause that states, in relevant part:

> 75. <u>LEADING INSURER:</u>
>
> In the event there are two or more insurers participating on this policy,
>
> 75.1 The subscribing insurers agree to follow the leading insurer(s), "As Per Declarations" with respect to additions, agreements, alterations, attachment and/or expiration dates, cancellations, deletions, endorsement, extensions and returns.
>
> 75.2 The subscribing insurers further agree to follow the leading insurer's agreements and/or settlements pertaining to claims, demands and/or losses, including legal actions and/or proceedings, and in the settlement thereof, and shall make prompt payment therefore as directed in the Loss Payable Clauses of this policy (as applicable) following receipt of advice of the basis upon which the leading insurer paid, or agrees to pay, their proportion of such claim, demand and/or loss, except for settlements on an "ex gratia" or extra-contractual basis, for which prior agreement of the subscribing insurers is required.
>
> * * *
>
> 75.5 The liability of the subscribing insurers under this policy is several and not joint. Each insurer is liable only for the proportion of liability it has underwritten and is not jointly liable for the proportion of liability underwritten by any other insurer, nor is it otherwise responsible for any liability of any other insurer that may underwrite this contract.

35. The Declaration Page to the Marine Cargo Policy, in turn, identifies Zurich as the "Lead Carrier."

## UNDERLYING FACTS – THE WAR RISKS POLICY

36. Underwriters, on a subscription basis, severally insure Chevron under the terms and

1  conditions of War Risks Policy No. MMSF-23-5033.  A true and correct copy of the War Risks

2  Policy is attached hereto as Exhibit 2 and is incorporated herein by reference.

3      37. Underwriters subscribe, severally and not jointly, to the War Risks Policy on the

4  following basis: Zurich at a 40% participation; Liberty at a 40% participation; and Great American

5  at a 20% participation.

6      38. The policy period of the War Risks Policy ran from April 1, 2023 to April 1, 2024.

7      39. The War Risks Policy and the Marine Cargo Policy share the same Declaration Page.

8      40. Among the terms and conditions of the War Risks Policy is a clause that states, in

9  relevant part:

> … The Insurer does make insurance and cause "As per Declarations"
> to be insured, lost or not lost, for account of whom it may concern,
> against War Risks only, in accordance with the terms and conditions
> hereinafter set forth.

    41. Among the terms and conditions of the War Risks Policy is a clause that states, in full:

> The Insurer shall not be liable hereunder for more than "As Per
> Declarations" by any one vessel.

    42. The Declaration Page to the War Risks Policy, in turn, provides that the Limits of Liability are "USD50,000,000 any one vessel or connecting conveyance."

    43. Among the terms and conditions of the War Risks Policy is a clause that states, in relevant part:

> This Policy shall cover only those shipments which are insured against
> marine risks under Policy No. "As Per Declarations" of The Insurer
> ….

    44. Among the terms and conditions of the War Risks Policy is a clause that states, in full:

> 1. (a)  This insurance is only against the risks of capture, seizure,
> destruction or damage by men-of-war, piracy, takings at sea,
> arrests, restraints, detainments and other warlike operations
> and acts of kings, princes and peoples in prosecution of
> hostilities or in the application of sanctions under international

agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom; the imposition of martial law, military or usurped power, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes. Warranted not to abandon (on any ground other than physical damage to ship or cargo) until after condemnation of the property insured.

(b) This insurance also covers, but only while property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under this Policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

45. Among the terms and conditions of the War Risks Policy is a clause that states, in full:

2. Warranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments.

46. Among the terms and conditions of the War Risks Policy is a clause that states, in full:

11. It is agreed that this Policy is a separate and wholly independent contract and is not subject to any terms or conditions of the Policy against marine risks above mentioned (whether physically attached thereto or not) except as such terms or conditions shall have been expressly incorporated herein by reference.

### UNDERLYING FACTS – THE LOSS

47. According to the Proof of Loss that Chevron U.S.A. submitted to Underwriters in connection with the insurance claim that is the subject of this action, Chevron U.S.A. chartered the ADVANTAGE SWEET (the "Vessel"), a crude oil tanker, "to transport crude from the Neutral Zone shared by Saudi Arabia and Kuwait to Houston, Texas."

48. According to the Proof of Loss, Iranian Navy commandos boarded the ADVANTAGE SWEET while the Vessel was in international waters in the Gulf of Oman on or about April 27, 2023 and seized control of the Vessel and its cargo of crude oil.

49. The ADVANTAGE SWEET was owned by a Chinese company and operated by a Turkish company at the time the Vessel was seized by the Iranian Navy.

50. The cargo of crude oil on board the ADVANTAGE SWEET was owned by Chevron U.S.A. at the time the cargo was seized by the Iranian Navy.

51. According to the Proof of Loss, the seized Vessel and its cargo were taken to a port in Iran where "the Iranian military … retained control of the Vessel for almost a year."

52. According to the Proof of Loss, Iran "confiscated" Chevron U.S.A.'s cargo of crude oil in or about March 2024 "under color of an Iranian court order."

53. According to the Proof of Loss, the crude oil was discharged from the ADVANTAGE SWEET to another vessel "controlled by Iran."

54. Quoting news reports and other sources, Chevron U.S.A. states in its Proof of Loss that:

(a) "the Iranian government stated that its actions regarding the vessel were 'in retaliation for crippling American sanctions against the Islamic Republic;' "

(b) "the seizure of the *Advantage Sweet* and her cargo was a direct retaliation against international sanctions against Iran by the United States, including but not limited to the U.S. government's [earlier] seizure (and later sale of) Iranian crude oil aboard the *Suez Rajan*;"

(c) "the 55th branch of the Tehran Court of Justice's actions in confiscating the cargo from the *Advantage Sweet* were in retaliation for American sanctions against Iran;"

(d) "Iranian state media reported that Iran's Navy once again described the seizure as an official retaliation for the United States' seizure of the *Suez Rajan*;" and

(e) "the Iranian government publicly announced on multiple occasions that its seizure of the *Advantage Sweet* was a retaliation against the United States government for imposing and executing sanctions on Iranian oil exports. To carry out that retaliation, Iranian authorities engaged two separate arms of the Iranian government – the Iranian Navy and Iranian judicial

system."

55. At the time the ADVANTAGE SWEET and its cargo were seized by the Iranian Navy, a state of war, either declared or undeclared, did not exist between Iran and the United States of America, the People's Republic of China or Turkey.

56. The seizure of the ADVANTAGE SWEET and its cargo by the Iranian Navy were not in furtherance of any enforcement of any international sanctions.

57. Iranian authorities were not acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof when they seized the ADVANTAGE SWEET and its cargo.

58. At the time Chevron U.S.A.'s cargo of crude oil was expropriated by Iranian authorities, a state of war, either declared or undeclared, did not exist between Iran and the United States of America.

59. The expropriation of Chevron U.S.A.'s cargo of crude oil by Iranian authorities was not in furtherance of any enforcement of any international sanctions.

60. Neither the Iranian Navy's seizure of the ADVANTAGE SWEET and its cargo nor the subsequent expropriation of Chevron U.S.A.'s cargo of crude oil by Iranian authorities were in furtherance of any warlike objective against any sovereign state or otherwise.

61. Iranian authorities were not acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof when they expropriated Chevron U.S.A.'s cargo of crude oil.

62. The loss of Chevron U.S.A.'s cargo of crude oil was not directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof.

**UNDERLYING FACTS – THE INSURANCE CLAIM**

63. Chevron, through its broker, notified Zurich of a potential claim on or about April 28, 2023.

64. Zurich, as Lead Carrier, issued a reservations of rights letter on June 21, 2023 in which Zurich advised "that, at the present time and based on the known facts, Zurich does not see any coverage afforded to Chevron under the Marine [Cargo] Policy or the War Risks Policy in respect of the incident."

65. In its reservations of rights letter, Zurich, as Lead Carrier, requested that Chevron advise if it had any additional information concerning the claim and to submit such information for Zurich's consideration.

66. A Proof of Loss was submitted to Underwriters by "Chevron Products Company (a Division of Chevron U.S.A., Inc.)" on April 5, 2024. A true and correct copy of the Proof of Loss is attached hereto as Exhibit 3 and is incorporated herein by reference.

67. The Proof of Loss defines and uses the term "Chevron" to mean only "Chevron Products Company (a Division of Chevron U.S.A., Inc.)."

68. Zurich, as Lead Carrier, investigated the claimed loss, including an exchange of correspondence, documents and information with Chevron, Chevron's broker and Chevron's outside counsel.

69. Zurich, as Lead Carrier, and Chevron, either directly or through its representatives, have exchanged their respective positions on coverage for the claimed loss under the Marine Cargo Policy and the War Risks Policy.

70. Chevron U.S.A. asserts in the Proof of Loss that its "losses attributable to Iran's seizure of the *Advantage Sweet* are [ ] covered under the Marine Cargo [Policy]."

71. Underwriters dispute that the claimed loss is covered under the Marine Cargo Policy.

72. There is a live dispute between Chevron U.S.A. and Underwriters as to whether the claimed loss is covered under the Marine Cargo Policy.

73. Chevron U.S.A. asserts in its Proof of Loss that "the seizure of the *Advantage Sweet* and later discharge and expropriation of Chevron [ U.S.A.'s] crude oil on the vessel by the Iranian government is an insured and covered risk within the War Risks [Policy]."

74. Underwriters dispute that the claimed loss is covered under the War Risks Policy.

75. There is a live dispute between Chevron U.S.A. and Underwriters as to whether the claimed loss is covered under the War Risks Policy.

76. Zurich, as Lead Carrier, sent a letter to Chevron on May 7, 2024 declining coverage for the claimed loss under both the Marine Cargo Policy and the War Risks Policy.

77. According to the Proof of Loss, "[a]s a result of the Iranian military's actions and the

Iranian judiciary's unjustified order, Chevron [U.S.A.] suffered a loss of at least $51,876,881.68. Accounting for the additional 10% of the value of the crude (which is $5,187,688.16) to which the Policy entitles Chevron [U.S.A.], the total value of Chevron [ U.S.A.'s] Claim is $57,064,569.85."

## AS AND FOR A FIRST CAUSE OF ACTION

78. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 77 of this Complaint with the same force and effect as if more fully set forth herein.

79. Under the FC&S Warranty in the Marine Cargo Policy, Chevron U.S.A. warrants that the insurance is "free from loss, damage or expense caused by or resulting from … capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt threat, whether in time of peace or war and whether lawful or otherwise."

80. The FC&S Warranty excludes coverage for the claimed loss of Chevron U.S.A.'s crude oil.

81. Furthermore, the perils excluded by the FC&S Warranty are not insured perils under the Conditions of Coverage clause in the Marine Cargo Policy.

82. Underwriters are entitled to a judgment declaring that there is no coverage for the claimed loss under the Marine Cargo Policy.

## AS AND FOR A SECOND CAUSE OF ACTION

83. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 82 of this Complaint with the same force and effect as if more fully set forth herein.

84. The War Risks Policy states that it insures "against War Risks only, in accordance with the terms and conditions [ ] set forth [in the policy]."

85. The claimed loss of Chevron U.S.A.'s crude oil does not fall within the insuring terms of the War Risks Policy.

86. The seizure of the crude oil and its later expropriation by Iran do not constitute "warlike operations" and were not "in prosecution of hostilities or in the application of sanctions under international agreements," as those terms are used in the insuring terms of the War Risks Policy.

87. Even assuming, *arguendo*, that the claimed loss did fall within the insuring terms of

the War Risks Policy, which is denied, coverage for the loss still does not exist because neither a warlike operation nor prosecution of hostilities nor the application of sanctions under an international agreement was the proximate cause of the claimed loss.

88. Furthermore, Iranian authorities were not acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof when they seized the crude oil and later expropriated it.

89. The loss of the crude oil was not directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof.

90. Underwriters are entitled to a judgment declaring that there is no coverage for the claimed loss under the War Risks Policy.

## AS AND FOR A THIRD CAUSE OF ACTION

91. Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 90 of this Complaint with the same force and effect as if more fully set forth herein.

92. Even assuming, *arguendo*, that the claimed loss did fall within the insuring terms of the War Risks Policy, which is denied, coverage would be excluded by Clause 2 of the policy under which the insurance is "[w]arranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments."

93. Underwriters are entitled to a judgment declaring that there is no coverage for the claimed loss under the War Risks Policy.

**WHEREFORE**, Plaintiffs Zurich American Insurance Company, Liberty Mutual Insurance Company and Great American Insurance Company pray as follows:

A. For judgment on the First Cause of Action in favor of Plaintiffs Zurich American Insurance Company, Liberty Mutual Insurance Company and Great American Insurance Company and against Defendant Chevron U.S.A. Inc. d/b/a Chevron Products Company and Defendant Chevron Corporation declaring that there is no coverage for the claimed loss under the Marine Cargo Policy;

B. For judgment on the Second Cause of Action in favor of Plaintiffs Zurich American Insurance Company, Liberty Mutual Insurance Company and Great American Insurance Company and against Defendant Chevron U.S.A. Inc. d/b/a Chevron Products Company and Defendant

Chevron Corporation declaring that there is no coverage for the claimed loss under the War Risks Policy;

  C. For judgment on the Third Cause of Action in favor of Plaintiffs Zurich American Insurance Company, Liberty Mutual Insurance Company and Great American Insurance Company and against Defendant Chevron U.S.A. Inc. d/b/a Chevron Products Company and Defendant Chevron Corporation declaring that there is no coverage for the claimed loss under the War Risks Policy; and

  D. For such other and further relief as the Court deems just and proper under the circumstances, together with the costs and disbursements of this action.

Dated: May 7, 2024      MOUND COTTON WOLLAN & GREENGRASS LLP

        By:  */s/Jonathan Gross*
          Jonathan Gross
          Jaime Ritton
          Attorneys for Plaintiffs
          ZURICH AMERICAN INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY

14

ZURICH AMERICAN INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY AND GREAT AMERICAN INSURANCE COMPANY'S COMPLAINT - CASE NO.