UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHEVRON U.S.A. INC., et al.,<br><br>Defendants. | Case No. 24-cv-02733-JSC<br><br>**ORDER RE: MARCH 7, 2025 JOINT DISCOVERY DISPUTE LETTERS**<br><br>Re: Dkt. Nos. 75, 76, 77 |

Multiple discovery disputes are pending before the Court. Pursuant to a previous agreement, (Dkt. No. 71); Chevron, the Primary Insurers[1], and the Excess Insurers[2] each submitted a separate statement raising and responding to the multiple disputes. (Dkt. No. 75, 76, 77.) The Court addressed the discovery disputes at the March 11, 2025 further Case Management Conference. This Order reiterates the orders and guidance the Court provided.

A further Case Management Conference is scheduled for April 23 at 2:00 p.m. via Zoom video. An updated Joint Case Management Conference Statement is due April 16, 2025. For future discovery disputes, the parties shall file a joint statement—one dispute per letter—that conforms with the Court's standing orders.

**A.** *Merck* **and** *Mondelez* **Cases**

Chevron requests documents from two cases—*Merck & Co., Inc. v. Ace American Ins.*

---

[1] "Primary Insurers" refers to Zurich American Insurance Company, Liberty Mutual Insurance Company, and Great American Insurance Company.

[2] "Excess Insurers" refers to Royal and Sun Alliance Insurance Ltd., Lloyd's Underwriter Syndicate No. 1414 ASC, Lloyd's Underwriters Syndicate No. 1225 AES, Lloyd's Underwriters Syndicate No. 2232 AWH, Lloyd's Underwriter Syndicate No. 1274 AUL, Lloyd's Underwriter Syndicate No. 0609 AUW, Lloyd's Underwriter Syndicate No. 2987 BRIT, Lloyd's Underwriter Syndicate No. 4444 CNP, Lloyd's Underwriter Syndicate No. 2488 CGM, and Lloyd's Underwriter Syndicate No. 3000 MKL

*Co.*, Superior Court of New Jersey, Law Division, Union County, Case No. UNN-L-002682-18 and *Mondelez Int'l, Inc. v. Zurich Am. Ins. Co.*, Circuit Court of Cook, County, Illinois, Case No. 2018-L-011008—which involved policies "contain[ing] exclusions for loss or damage caused by 'hostile or warlike action.'" (Dkt. No. 75 at 3.) As discussed at the hearing, the Court orders Zurich, Liberty Mutual, and Canopius to produce all substantive briefs, including summary judgment briefs, they filed in the *Merck* and/or *Mondelez* case as a starting point. If portions of the briefs are redacted, those redactions must meet the Northern District of California's standard.

### B. Similarly Situated Policyholders and Claims

Chevron requests the Primary Insurers produce documents concerning their handling of similarly situated policyholders and claims. The Primary Insurers respond it would be extremely burdensome to "manually search[] tens of thousands of claims files to find claims involving terms 'hostile' or 'warlike.'" (Dkt. No. 77-1 at 5.)

At the hearing, Zurich's counsel represented that approximately 15 to 20 people at Zurich handle war-risk claims. As discussed at the hearing, Zurich should ask those individuals whether they recall handling a claim "involving the seizure, capture, and or detainment of a vessel by any private or government actor" as a starting point. (Dkt. No. 75 at 5.) The other Primary Insurers should do the same and convey what they learn to Chevron.

### C. Reserves Information

Chevron requests the Primary Insurers produce documents "concerning the establishment of any reserves or reinsurance in connection with Chevron's Claim." (Dkt. No. 75 at 7.)

As to the information Zurich produced, if Chevron has concerns about the redactions, Chevron must meet and confer with Zurich.

Great American and Liberty "object[] to the production of reserve information on grounds of relevance, confidentiality, burden, and work product." (Dkt. No. 77-1 at 6.) If Chevron intends to seek this information and Great American and Liberty maintain their position that the reserve information is privileged, the parties should file a discovery dispute joint letter. Because the burden is on the party asserting the privilege, the insurers should substantiate their privilege claim.

**D.     Reinsurance**

Chevron requests the Primary Insurers produce (1) reinsurance agreements and (2) substantive communications regarding reinsurance.

As to the reinsurance agreements, Chevron has not articulated their relevance in this case. As to substantive communications, the Primary Insurers respond they "have already reported to Chevron that they have no substantive communications with reinsurers as described by Chevron, such as those reflecting evaluations of coverage or other statements of risk." (Dkt. No. 77-1 at 7.) As discussed at the hearing, the Primary Insurers should communicate to Chevron the efforts they undertook to locate substantive communications. Then, if Chevron believes the Primary Insurers may have withheld relevant documents, Chevron may raise the issue through a discovery dispute joint letter.

**E.     Marketing Materials and Claims Handling Manuals**

"Chevron request[s] responsive, non-privileged marketing materials, claims handling manuals, and other similar documents related to Chevron's claims." (Dkt. No. 75 at 9.)

As described at the hearing, "other similar documents" is too vague. As to claims handling manuals, at the hearing counsel for the Primary Insurers described efforts that were undertaken to locate relevant manuals, and Chevron's counsel agreed such searches were sufficient. As to marketing materials, Chevron's counsel was unable to articulate what narrow searches the Primary Insurers could run to locate relevant documents. So, the Court declines to order any supplemental production at this time.

**F.     Search Terms and Custodians**

Chevron contends the insurers' "lists of search terms and custodians remain woefully inadequate." (Dkt. No. 75.) Both the Primary and Excess Insurers lament Chevron has not fulfilled the meet and confer obligation on this issue, so the Court does not address it.

**G.     Timeframe for Searches**

Chevron requests that the insurers expand their timeframe for discovery from 2017—"the year Zurich began negotiating with Chevron to join Chevron's insurance program"—to the present. (Dkt. No. 75 at 10.) At the hearing, Zurich's counsel represented Zurich is in the process

3

1   of searching for and reviewing relevant documents back to 2017.

2   In addition, the Primary Insurers take issue with the "limited date range" Chevron used to
3   identify documents. (Dkt. No. 77-1 at 10.) As discussed at the hearing, the parties should meet
4   and confer on this issue.

### H. Non-Responsive Attachments

The Primary Insurers contend Chevron is withholding relevant documents, including "approximately 100 attachments to relevant communications and other documents on the grounds that those attachments are not relevant/responsive." (Dkt. No. 77-1 at 9.) The ESI protocol provides that non-responsive attachments may be withheld.

As discussed at the hearing, if the Primary Insurers believe an attachment Chevron withheld is responsive, the Primary Insurers should raise the issue with Chevron. Chevron may explain why the attachment is not responsive, or in the case of non-privileged attachments, show the attachment to the Primary Insurers to communicate its lack of relevance.

This Order disposes of Docket Nos. 75, 76, and 77.

**IT IS SO ORDERED.**

Dated: March 13, 2025

JACQUELINE SCOTT CORLEY
United States District Judge