United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CHEVRON U.S.A. INC., et al.,<br><br>　　　　Defendants. | Case No. 24-cv-02733-JSC<br><br>**MOTION FOR LEAVE TO AMEND AND SUPPLEMENT COUNTERCLAIM**<br><br>Re: Dkt. No. 85 |

Chevron U.S.A. Inc. d/b/a/ Chevron Products Company (a division of Chevron U.S.A. Inc) and Chevron Corporation (together, "Chevron") move for leave to amend and supplement its counterclaim. Specifically, Chevron seeks to (1) assert breach of contract and bad-faith claims against the Excess Insurers[1], and (2) add allegations regarding the Court's subject matter jurisdiction over the case. Having carefully considered the parties' submissions, the Court determines oral argument is not required, see N.D. Cal. Civ. L.R. 7-1(b), vacates the May 22, 2025 hearing, and GRANTS Chevron's motion to amend. There is good cause to modify the pretrial schedule because documents supporting Chevron's amendment were produced after the deadline to amend the pleadings. And as fact discovery is still open and the deadline for dispositive motions is approximately ten months away, the amendment will not prejudice the Excess Insurers.

//

---

[1] The "Excess Insurers" are Royal and Sun Alliance Insurance Ltd.; Lloyd's Underwriter Syndicate No. 1414 ASC; Lloyd's Underwriter Syndicate No. 1225 AES; Lloyd's Underwriter Syndicate No. 2232 AWH; Lloyd's Underwriter Syndicate No. 1274 AUL; Lloyd's Underwriter Syndicate No. 0609 AUW; Lloyd's Underwriter Syndicate No. 2987 BRIT; Lloyd's Underwriter Syndicate No. 4444 CNP; Lloyd's Underwriter Syndicate No. 2488 CGM; Lloyd's Underwriter Syndicate No. 3000 MKL; Navium Marine Limited; and Fidelis Underwriting Limited. (Dkt. No. 17 ¶ 1.)

**BACKGROUND**

As alleged in Chevron's counterclaim, "Chevron purchased a tower of insurance that provide[d] $200,000,000 in total coverage for the period April 1, 2023 – April 1, 2024." (Dkt. No. 17 ¶ 43.) "The Primary Insurers[2] provide the first $50,000,000 of coverage and the Excess Insurers provide the remaining $150,000,000." (*Id.*)

In April 2023, an oil tanker "was transporting Chevron's crude oil cargo in international waters destined for Houston, Texas, when armed forces from Iran's Islamic Revolutionary Guard Corps . . . violently captured and seized control" of the tanker. (*Id.* ¶¶ 8-9.) The Iranian Navy "detained the vessel and Chevron's cargo until March 2024, when Iranian military forces forcibly discharged Chevron's crude oil . . . onto another vessel controlled by the government of Iran." (*Id.* ¶ 10.)

"Chevron provided notice and details of Iran's Hostile Taking to the Primary and Excess Insurers on April 27, 2023." (*Id.* ¶ 59.) In June 2023, "Zurich, acting for the Primary Insurers, issued a denial-of-coverage letter to Chevron" on the ground there was no covered loss. (*Id.*) "Notwithstanding the Primary Insurers' denial of coverage, Chevron submitted a Proof of Loss to both the Primary and Excess Insurers on April 8, 2024" for a total of $57,064,569.85. (*Id.* ¶ 62.)

On May 7, 2024, the Primary Insurers sued Chevron, seeking "a judgment declaring that there is no coverage for the claimed loss" under the Marine Cargo Policy and the War Risks Policy. (Dkt. No. 1.) Later that month, Chevron filed an answer and three counterclaims. (Dkt. No. 17.) The first claim against both the Primary and Excess insurers "seeks a judicial declaration . . . stating that Chevron's losses are covered under the Policies." (*Id.* ¶ 70.) The second and third claims against the Primary Insurers assert breach of contract and breach of the implied covenant of good faith and fair dealing. (*Id.* at 36-40.)

On April 3, 2025—after the deadline to amend the pleadings—Chevron filed the present motion seeking leave to amend and supplement its counterclaim. (Dkt. No. 85.) While the Primary Insurers do not oppose Chevron's motion, (Dkt. No. 90), the Excess Insurers filed a brief

---

[2] The "Primary Insurers" are Zurich American Insurance Company, Liberty Mutual Insurance Company, and Great American Insurance Group. (Dkt. No. 17 ¶ 1.)

2

in opposition. (Dkt. No. 92-1.)

**LEGAL STANDARD**

"Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings." *Yates v. Auto City 76*, 299 F.R.D. 611, 613 (N.D. Cal. 2013). Rule 15(a) pertains to amendments before trial. Fed. R. Civ. P. 15(a). And Rule 15(d) "permit[s] a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "The legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as the standard for granting or denying a motion under Rule 15(a)." *Yates*, 299 F.R.D. at 614 (cleaned up).

When, as here, the court "filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings," the Rule 16 standard also applies. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). In such instance, a party seeking to amend a pleading "must first show 'good cause' for amendment under Rule 16(b), then, if 'good cause' be shown, the party must demonstrate that amendment was proper under Rule 15." *Id.* at 608 (citation omitted). So, Chevron must meet Rule 16's standard to modify the scheduling order, followed by Rule 15's standard to amend and supplement.

**DISCUSSION**

Chevron seeks leave to amend and supplement its counterclaim for two purposes: (1) to "assert breach of contract and bad-faith claims against the Excess Insurers," and (2) to "add allegations regarding the Court's subject matter jurisdiction over this case for the anticipated briefing on the issue due in December 2025." (Dkt. No. 85 at 3.) "The Excess Insurers do not oppose the amendment in respect of Chevron's allegations regarding the Court's subject-matter jurisdiction." (Dkt. No. 92-1 at 8 n.1.) So, the Court GRANTS Chevron's request to amend the counterclaim to add allegations regarding the Court's subject matter jurisdiction.

The Court thus turns to Chevron's request to assert breach of contract and bad-faith claims against the Excess Insurers, which the Excess Insurers oppose.

**A.     Rule 16**

Under Rule 16(b), a party seeking to amend a scheduling order must demonstrate "good

3

cause" for doing so. Fed. R. Civ. P. 16(b). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment," and "[i]f that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. Although the Court may consider prejudice to the opposing party, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Id.* Chevron contends there is good cause because "it was only able to discover the Excess Insurers' failure to investigate Chevron's claim through review of the documents produced by the Excess Insurers after the January 9, 2025 deadline to amend the pleadings." (Dkt. No. 85 at 14.)

As Chevron observes, the Excess Insurers' first productions occurred after the deadline to amend the pleadings. On August 20, 2024, Chevron served requests for production on the Excess Insurers. (Dkt. No. 85-1 ¶ 5.) Chevron requested "All Documents that concern any investigation conducted . . . regarding Iran's Hostile Taking or Chevron's Claim" and "All Documents that You . . . prepared, authored, sent, received or reviewed, including claims or investigation information, claims or investigation files, meeting notes and diaries regarding or referring to Chevron's Claim." (Dkt. No. 85-2 at 9.) On September 26, 2024, the Excess Insurers "served boilerplate responses to Chevron's requests without any production of documents." (Dkt. No. 85-1 ¶ 6.) Over the following weeks, the parties met and conferred about discovery issues. (*Id.* ¶¶ 6-9.) On February 5, 2025, Royal and Sun Alliance, an Excess Insurer, served amended responses and produced 222 documents. (*Id.* ¶ 10.) Over the following weeks, other Excess Insurers made productions, with the final production occurring on March 27, 2025. (*Id.* ¶¶ 10-11.) By that time, the January 9, 2025 deadline to amend had passed.

Chevron's attorney attests that upon reviewing the Excess Insurers' production, Chevron "discovered that none of the Excess Insurers conducted an adequate or independent good-faith investigation into Chevron's claims." (Dkt. No. 85-1 ¶ 12.) And Chevron identifies documents from the February and March 2025 productions supporting this assertion. (Dkt. No. 85-11 at 4 (a Royal and Sun Alliance claims adjuster stating "[g]iven the full follow status, we must make sure we're in line with Zurich and so we are coordinating with them"); (Dkt. No. 85-12 at 2) (a Royal and Sun Alliance claims adjuster stating its policy "follows form to the Zurich American policy"

4

so it would "continue to monitor Chevron's claim"); Dkt. No. 85-13 (Ascot claim notes requesting Zurich's initial response and stating "until these documents are received, . . . underwriters are unable to comment on coverage or reserving"); Dkt. No. 85-15 (Ascot claim notes stating "Zurich's position remains unchanged. Broker comments suggest no further activity / exchanges since."); (Dkt. No. 85-16 at 2 (Antares claim manager stating "I am expecting an MDC from Ascot in due course which will provide further details around the loss itself and the coverage dispute").) Chevron notes "[w]hat is absent from the Excess Insurers' productions is even more telling" as "[t]he Excess Insurers produced nothing showing or referencing even a minimal investigative effort either before or after Zurich filed this action." (Dkt. No. 85 at 13.)

The discovery, produced after the deadline to amend the pleadings, provides the requisite good cause under Rule 16. As other courts have recognized, "[t]he production of evidence including new information after a pleading amendment deadline may constitute good cause to modify the scheduling order." *Neylon v. Cnty. of Inyo*, No. 116CV00712AWIJLT, 2017 WL 1549939, at *5 (E.D. Cal. May 1, 2017); *see also Acad. of Country Music v. ACM Recs., Inc.*, No. CV 13-02448 DDP RZX, 2014 WL 2586859, at *3 (C.D. Cal. June 10, 2014) (granting motion to amend when "the facts apparently available to Plaintiff at the time of the December 8, 2013 cut-off for the amendment of pleadings were not sufficient to expect Plaintiff to have sought to amend its pleading to add a cancellation claim"); *Tofasco of Am., Inc v. Atico Int'l, U.S.A., Inc.*, No. CVNO074120ABCJWJX, 2008 WL 11342850, at *2 (C.D. Cal. Apr. 24, 2008) (granting motion to amend when the moving party "acted diligently to discover . . . the key evidence to support their inequitable conduct claim before the deadline to amend pleadings, but that such evidence was not produced by Plaintiff until after that deadline passed").

And upon receiving the discovery, Chevron timely filed a motion to amend. The Excess Insurers' productions occurred from February 5, 2025 to March 27, 2025. (Dkt. No. 85-1 ¶¶ 10-11.) Even calculating from the February 5, 2025 production date, Chevron filed the motion to amend 57 days later—on April 3, 2025. While the Excess Insurers take issue with Chevron's two-month delay in filing the present motion, they cite no case law supporting their contention such delay renders the motion untimely. Meanwhile, as Chevron observes, other courts have granted

leave to amend in similar circumstances. *See, e.g.*, *NexGen HBM, Inc. v. ListReports, Inc.*, No. CV 17-06522-AB (SKX), 2018 WL 6438568, at *2 (C.D. Cal. Jan. 25, 2018) ("Plaintiffs' delay of less than two months is not undue delay."). The Excess Insurers also argue "Chevron has identified no newly discovered evidence that would justify amendment." (Dkt. No. 92-1 at 15.) According to the Excess Insurers, Chevron "learned of the Excess Insurers' position regarding coverage as early as June 26, 2024 when the Excess Insurers filed their Answer to Chevron's Counterclaim." (*Id.*) That Chevron knew the Excess Insurers denied coverage is different than Chevron knowing by what means the Excess Insurers decided to deny coverage.

Meanwhile, the Excess Insurers fail to demonstrate prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987) ("The party opposing amendment bears the burden of showing prejudice."). The Excess Insurers describe the cost and expense they have already undertaken to respond to Chevron's discovery requests and argue "[g]ranting Chevron's amendment will further burden the Excess Insurers more than it has already done so given Chevron's scorched earth litigation tactics." (Dkt. No. 92-1 at 17.) As the Excess Insurers already produced "the non-privileged documents from each Excess Insurers' claim and underwriting files," (Dkt. No. 92-1 at 11), the burden of additional discovery should be minimal. Regardless, "[t]he need for additional discovery is insufficient by itself to deny a proposed amended pleading." *In re Cir. Breaker Litig.*, 175 F.R.D. 547, 551 (C.D. Cal. 1997). The Excess Insurers do not articulate other prejudice resulting from amendment at this relatively early stage in the case, nor could they. As the deadline for fact discovery is July 25, 2025, Chevron's proposed amendment does not necessitate reopening discovery. *See Motekaitis v. USI Ins. Servs. Nat'l, Inc.*, No. 24-CV-00885-RS, 2025 WL 50603, at *3 (N.D. Cal. Jan. 7, 2025) (stating "discovery is still ongoing, so although the amendment may require additional discovery, it does not require reopening discovery and thus falls short of the sort of prejudice that would weigh against granting the motion"). What's more, the February 16, 2026 deadline for dispositive motions is approximately ten months away, and the May 18, 2026 trial date is over a year away. (Dkt. No. 52.) So, there is good cause to amend under Rule 16.

//

//

**B.  Rule 15**

Next, the Court turns to whether amendment is proper under Rule 15.  *Johnson*, 975 F.2d at 608.  The district court is afforded discretion to grant leave to amend pleadings and "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Factors relevant to whether leave to amend should be granted are whether the moving party acted in bad faith or unduly delayed in seeking amendment, whether the opposing party would be prejudiced, whether an amendment would be futile, and whether the movant previously amended the pleading.  *See*, *e.g. United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).  As discussed above, Chevron has a valid basis for seeking amendment and acted diligently upon receiving the Excess Insurers' document productions justifying the amendment.  The Excess Insurers failed to demonstrate prejudice.  Chevron has not previously moved to amend.  All these factors weigh in favor of granting leave to amend.

The parties dispute whether amendment is futile.  The Excess Insurers argue amendment would be futile because their coverage obligations "can only be triggered if the $50 million in primary coverage is exhausted" and "[c]onsidering the Primary Insurers have denied coverage, the Excess Insurers' obligations have not been triggered."  (Dkt. No. 92-1 at 20.)  Chevron argues because it has "alleged a loss that exceeds the Primary Insurers' limits," the Excess Insurers' obligations—including the duty to investigate—have been triggered.  (Dkt. No. 101 at 8.)

Under California law, "[l]iability under an excess policy attaches only after all primary coverage has been exhausted."  *N. River Ins. Co. v. Am. Home Assurance Co.*, 210 Cal. App. 3d 108, 112 (1989).  The Excess Insurers cite three cases applying this principle.  In *Signal Companies, Inc. v. Harbor Ins. Co.,* 27 Cal. 3d 359, 365 (1980), the California Supreme Court concluded an excess insurer was not obligated to contribute to the defense costs incurred by the primary insurer before the primary insurer's coverage was exhausted.  In *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994), the Ninth Circuit found an insured could not sue "excess insurers for breach of contract until the legal obligations of the primary insurers had been determined and the excess policies had been triggered."  And finally, in *Travelers Cas. & Sur. Co.*

7

*v. Am. Int'l Surplus Lines Ins. Co.*, 465 F. Supp. 2d 1005, 1028 (S.D. Cal. 2006), the court found "the primary insurer owe[d] the *exclusive* duty to defend the insured against third party claims until the primary coverage [was] exhausted or otherwise not on the risk." So, the Excess Insurers argue, "Chevron cannot assert a breach of contract claim or a bad faith claim against Excess Insurers because the primary insurance has not been exhausted." (Dkt. No. 92-1 at 19.)

But in all three cases the Excess Insurers rely on, the courts' reasoning was based in part on the contract language. *See Signal*, 27 Cal. at 367 ("[The excess insurer's] policy explicitly state[d] that its liability would not attach until the primary coverage has been exhausted."); *Iolab*, 15 F.3d at 1503 ("The excess policies specifically provide that their liability does not attach until the underlying insurers have paid or have been held liable to pay."); *Travelers Cas. & Sur. Co.*, 465 F. Supp. 2d at 1028 ("[The excess insurer's] obligations, by the express terms of its policy, are triggered only in the event all primary coverage is first exhausted."). Here, in contrast, the Excess Insurers do not identify a contract provision explicitly stating their liability does not attach until the primary insurance is exhausted. Instead, the Excess Insurers highlight the following language:

> As per Underlying Policy MMSF-19-4606 (or renewal thereof) and to follow the Underlying Policy MMSF-19-4606 (or renewal thereof) in all respects, claims included.

(Dkt. No. 92-2 ¶ 4.) That the Excess Policy "follow[s] . . . in all respects" the Primary Policy could mean the Excess Insurers' obligations are triggered only upon exhaustion of the primary insurance policy. But this is not the only interpretation.

Moreover, the cases the Excess Insurers cite are all about when an excess insurers' duties to *defend* and *indemnify* are triggered, whereas the proposed amendment is about their duty to *investigate*. The *Signal* and *Iolab* courts sought to prevent the excess insurers from incurring costs through defending the claim "even though excess liability might never attach." *Signal*, 27 Cal. at 367-68; *Iolab*, 15 F.3d at 1505 ("requiring the excess insurers to defend against [the insured's] claim would impose on the excess insurers the unnecessary cost of litigating a claim that may never trigger excess coverage"). The cases say nothing about whether excess insurers have an independent duty to investigate an insured's claim. And as Chevron notes, under California law, "*[e]very* insurer shall conduct and diligently pursue a thorough, fair and objective investigation."

8

1    Cal. Code Regs. tit. 10, § 2695.7(d) (emphasis added).  The Excess Insurers respond this

2    regulation "makes no mention of application to excess insurers" and argue "California courts have

3    imposed a duty to thoroughly investigate claims only on primary insurers, not excess insurers."

4    (Dkt. No. 92-1 at 21.)  But the Excess Insurers cite no legal authority to support this proposition.

5          Chevron also identifies cases in which the insured was permitted to allege claims against

6    an excess insurer when the primary policy had not been exhausted.  In *Fremont Reorganizing*

7    *Corp. v. Fed. Ins. Co.*, No. SACV0901208JVSANX, 2010 WL 444718, at *2 (C.D. Cal. Feb. 1,

8    2010), the court rejected the excess insurer's contention that "because [the primary insurer] has

9    not yet paid the primary policy limits, [the insured] has no contractual claim against [it]."  Instead,

10   the court found "so long as the plaintiff alleges a loss that exceeds the primary coverage, it may

11   state a claim against the excess carrier."  *Id.* *4.  The court's reasoning was based in part "on the

12   language of the contract," in which "there [was] no explicit requirement that the primary policy

13   limits actually be paid" to trigger liability.  *Id.*  And in *ABM Indus., Inc. v. Zurich Am. Ins. Co.*,

14   237 F.R.D. 225, 229 (N.D. Cal. 2006), the court permitted the plaintiff to amend the complaint to

15   add a claim for insurance bad faith against the excess insurer.  The court explained that "taking as

16   true Plaintiffs' allegations that the amount of the settlement in the Underlying Action triggers [the

17   excess insurer's] policy, the reasonableness of [the excess insurer's] denial of coverage is

18   implicated." *Id.*

19         "[A] proposed amendment is futile only if no set of facts can be proved under the

20   amendment to the pleadings that would constitute a valid and sufficient claim or defense."

21   *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997) (internal quotations omitted).  The

22   Excess Insurers may ultimately prevail in arguing they cannot be liable for breach of contract or

23   breach of the covenant of good faith and fair dealing because they had no duty to investigate.

24   Alternatively, the Excess Insurers may prevail in showing there was no breach because they

25   complied with their duty to investigate.  But given the conflicting case law and the Excess

26   Insurers' lack of analysis on the language of the parties' excess insurance policy, the Excess

27   Insurers fail to establish amendment is futile.  So, Chevron "ought to be afforded an opportunity to

28   test [its] claim on the merits."  *See DCD Programs*, 833 F.2d at 188.

## SEALING

Accompanying the briefs are sealing motions. First, Chevron filed an administrative motion to consider whether Exhibit 16 to the Declaration of Mikaela Whitman—and references in the brief and supporting declaration to Exhibit 16—should be sealed. (Dkt. No. 84.) The Excess Insurers respond "Exhibit 16 . . . contains information that one of the Excess Insurers, Counterclaim Defendant Lloyd's Underwriter Syndicate No. 2232 AWH ('AWAC') treats as confidential in the ordinary course of its business." (Dkt. No. 91 ¶ 3.) Specifically, "the Exhibit depicts screenshots of AWAC's internal proprietary claims management software that could be used to AWAC's disadvantage by competitors if it were not filed under seal." (*Id.* ¶ 5.) The Court GRANTS the narrowly tailored request to seal Exhibit 16 at Docket No. 84-3. As AWAC "does not maintain a claim of confidentiality" regarding references to the contents of Exhibit 16 in Chevron's motion and supporting declaration, Chevron shall refile these documents without redactions.

Second, the Excess Insurers filed an administrative motion to consider whether documents Chevron designated as confidential should be filed under seal. (Dkt. No. 92.) In response, "Chevron releases its claim of confidentiality as to the documents listed in the Excess Insurers' Administrative Motion." (Dkt. No. 102 ¶ 3.) So, the Excess Insurers shall refile their opposition brief and supporting declaration and exhibit without redactions.

## CONCLUSION

For the reasons stated above, the Court GRANTS Chevron's motion to amend and supplement the counterclaim to (1) assert breach of contract and bad-faith claims against the Excess Insurers, and (2) add allegations regarding the Court's subject matter jurisdiction over the case.

//
//
//
//
//

This Order disposes of Docket Nos. 84, 85, and 92.

**IT IS SO ORDERED.**

Dated: May 2, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

11