UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ZURICH AMERICAN INSURANCE
COMPANY, et al.,

         Plaintiffs,

    v.

CHEVRON U.S.A. INC., et al.,

         Defendants.

Case No.  24-cv-02733-JSC

**ORDER RE: CHEVRON'S MOTION
FOR LEAVE TO AMEND AND
SUPPLEMENT COUNTERCLAIMS**

Re: Dkt. Nos. 180, 181, 182, 183, 190, 191, 195

**FINAL REDACTED VERSION**

In this insurance-coverage dispute, Chevron moves for leave to amend and supplement its counterclaims.  (Dkt. No. 183.)[1]  Specifically, Chevron seeks to add fraud, negligent misrepresentation, and fraudulent misrepresentation counterclaims against the Primary Insurers.  (Dkt. No. 181-4.)  Having carefully considered the parties' submissions, and with the benefit of oral argument on February 26, 2026, the Court DENIES Chevron's motion for leave to amend and supplement its counterclaims.  Chevron has not demonstrated good cause to modify the pretrial schedule because facts supporting Chevron's amendment were available before the deadline to amend the pleadings, and because fact discovery has closed, permitting amendment would prejudice Primary Insurers.

//

//

//

//

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

**BACKGROUND**

## I.    AMENDED COUNTERCLAIM ALLEGATIONS

As alleged in Chevron's operative amended counterclaim, Chevron purchased primary and excess insurance policies from its insurers to cover "potential losses caused by adverse circumstances and events in the shipping and transportation of its crude oil." (Dkt. No. 109 at 17 ¶ 3.) Chevron's primary insurance policy included a War Risks Coverage Section, protecting Chevron's cargo "'against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea, arrests, restraints, detainments and other warlike operations.'" (*Id.* at 29 ¶ 47 (emphasis removed).) The Primary Insurers required Chevron to pay an additional premium for cargo transported through the "Gulf of Oman" region "because of potential hostilities and seizures of its cargo that Chevron could face in that region." (*Id.* at 17 ¶ 3.) In total, Chevron's "tower of insurance" provided $200,000,000 for the period April 1, 2023 – April 1, 2024; the Primary Insurers provided the first $50,000,000 of coverage and the Excess Insurers provided the remaining $150,000,000. (*Id.* at 18 ¶ 42.)

In April 2023, Chevron's Advantage Sweet oil tanker "was transporting Chevron's crude oil cargo in international waters destined for Houston, Texas, when armed forces from Iran's Islamic Revolutionary Guard Corps . . . violently captured and seized control" of the tanker. (*Id.* at 19 ¶ 9.) The Iranian Navy "detained the vessel and Chevron's cargo until March 2024, when Iranian military forces forcibly discharged Chevron's crude oil . . . onto another vessel controlled by the government of Iran." (*Id.* at 20 ¶ 10.) After the incident, "Chevron provided notice and details of Iran's Hostile Taking to the Primary and Excess Insurers on April 27, 2023." (*Id.* at 32 ¶ 58.) In June 2023, "Zurich, acting for the Primary Insurers, issued a denial-of-coverage letter to Chevron" on the grounds there was no covered loss. (*Id.*) "Notwithstanding the Primary Insurers' denial of coverage, Chevron submitted a Proof of Loss to both the Primary and Excess Insurers on April 8, 2024," for a total of $57,064,569.85. (*Id.* at 33 ¶ 61.)

## II.    PROCEDURAL HISTORY

On May 7, 2024, the Primary Insurers sued Chevron, seeking "a judgment declaring that there is no coverage for the claimed loss" under the Marine Cargo Policy and the War Risks

United States District Court
Northern District of California

Policy.  (Dkt. Nos. 1, 2.)  Later that month, Chevron filed an answer and three counterclaims against Primary and Excess Insurers.  (Dkt. No. 17.)  The first claim against both the Primary and Excess Insurers sought "a judicial declaration . . . stating that Chevron's losses are covered under the Policies."  (*Id.* at 36 ¶ 70.)  The second and third claims against the Primary Insurers asserted breach of contract and breach of the implied covenant of good faith and fair dealing.  (*Id.* ¶¶ 72-86.)

On September 5, 2024, the Court issued its first pretrial order setting a January 9, 2025 deadline for the parties to move to amend their pleadings.  (Dkt. No. 52.)  On April 3, 2025, Chevron moved to amend and supplement its counterclaims to (1) assert breach of contract and bad-faith claims against the Excess Insurers, and (2) add allegations regarding the Court's subject matter jurisdiction.  (Dkt. No. 85.)  The Court found good cause for amendment because documents supporting Chevron's amendment were produced after the January 2025 deadline to amend the pleadings.  (Dkt. No. 104 at 1.)  The Court also found amendment appropriate because fact discovery remained open, and the deadline for dispositive motions was ten months away, so the amendment would not prejudice the Excess Insurers.  (*Id.*)  Chevron subsequently filed amended and supplemental counterclaims.  (Dkt. No. 109.)

The Court amended the case schedule, setting fact discovery to close on December 19, 2025, expert discovery to close on March 5, 2026, the dispositive motion deadline as March 12, 2026, and trial to begin on July 14, 2026. (Dkt. No. 143; Dkt. No. 174 at 11-12.)[2]  However, on January 13, 2026, Chevron filed this second motion for leave to amend and supplement its counterclaims, seeking to add counterclaims against the Primary Insurers for fraud, negligent misrepresentation, and fraudulent misrepresentation.  (Dkt. No. 183; Dkt. No. 180-17; Dkt. No. 181-4.)  As of the February 26, 2026 oral argument, fact discovery had closed and one week of expert discovery remained.

//

---

[2] On February 26, 2026, the Court granted the Parties' stipulated extended case schedule, moving the expert discovery cutoff to March 17, 2026, and the deadline for filing dispositive motions to April 3, 2026 (Dkt. No. 204 at 4).  The Court also moved trial to begin in September 2026.

**LEGAL STANDARD**

A party seeking leave to amend its pleadings after the deadline specified in a scheduling order must first satisfy Rule 16(b)'s "good cause" standard. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992) (contrasting Rule 16's standard with Rule 15's "liberal amendment policy"). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "If [the moving] party was not diligent, the inquiry should end." *Id.* Although "the focus of the inquiry is upon the moving party's reasons for seeking modification," the Court may also consider "existence or degree of prejudice to the party opposing the modification." *Id.* (citation omitted). If the Court finds that Rule 16 is satisfied, it then must evaluate the request to amend under Rule 15(a)'s more liberal standard. *See id.* at 608.

**DISCUSSION**

Chevron seeks leave to amend to add three additional causes of action against the Primary Insurers for fraud (Count IV), negligent representation (Count V), and fraudulent misrepresentation (Count VI). (Dkt. No. 181-4.) The claims relate to Primary Insurers' representations to Chevron about of the scope of Chevron's war risks coverage. (Dkt. No. 180-17 at 14.) According to Chevron, "Zurich's corporate representative for underwriting topics testified that Zurich cancelled Chevron's war risks coverage and instituted the War Risks Premiums in response to Iranian hostilities toward commercial vessels in 2019." (*Id.* at 16.) So, "Chevron began paying millions of dollars of War Risks Premiums in response to events materially identical to the Advantage Sweet's seizure." (*Id.* at 12.)

Chevron asserts it recently discovered in depositions: (1) "the Primary Insurers never intended to cover any loss under the policy unless it arose within the context of a formal, declared war between the United States and Iran," and (2) "their established practice is to cancel coverage permanently on 48 hours' notice without reinstatement when declared wars threaten a covered region." (*Id.* at 9.) So, "[f]or the Primary Insurers to demand and accept the War Risks Premiums, while secretly holding this absurd view of the coverage it afforded, is fraud." (*Id.*)

United States District Court
Northern District of California

4

According to Chevron, had it known voyages would only be covered if there was a declared war between Iran and the United States, "[i]t is inconceivable that Chevron would have agreed to pay War Risks Premiums for each voyage through the Gulf Region." (*Id.* at 14.)

## I.    "GOOD CAUSE" UNDER RULE 16(B)

Because the Court has entered a scheduling order and Chevron moves to amend its counterclaims more than a year after the January 9, 2025 deadline, Rule 16(b) applies and Chevron must demonstrate "good cause for not having amended [its] complaint before the time specified in the scheduling order expired." *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).

"[T]he production of evidence including new information after a pleading amendment deadline may constitute good cause to modify the scheduling order." *Zurich Am. Ins. Co. v. Chevron USA, Inc.*, No. 24-CV-02733-JSC, 2025 WL 1282630, at *3 (N.D. Cal. May 2, 2025) (quotation marks and citations omitted). However, "[t]he good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action." *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (affirming district court's denial of motion to amend when plaintiffs knew claims may have been viable two years before the deadline to amend the pleadings); *see also Johnson*, 975 F.2d at 609 (affirming denial of the plaintiff's motion to amend when the defendant's "answer to the complaint and response to interrogatories amply indicated" it was not the proper defendant). So, the issue is whether Chevron only recently learned the facts underlying the proposed new claims: (1) the Primary Insurers' declared war position, and (2) the effect of the 48-hour cancellation clause.

### A.    The Declared War Position

Chevron claims it did not know the Primary Insurers' intent or practice regarding its War Risks Policy until it deposed Zurich's Rule 30(b)(6) representative, Ara Kazanjian, on September 11, 2025. (Dkt. No. 180-17 at 12 (citing Dkt. No. 180-2).) In the deposition, Mr. Kazanjian stated Zurich charged the War Risks Premiums "should a war break out and [it] suffer loss within that time frame," meaning the 48-hour period between the start of war and when Zurich can cancel the

United States District Court
Northern District of California

policy. (Dkt. No. 180-2 at 7.) Subsequent depositions reiterated the Primary Insurers' position their War Risks Policies only covered declared wars. (Dkt. No. 182-3 at 4 (Oct. 8, 2025 Patterson Dep. Tr.); Dkt. No. 182-4 at 4-5 (Oct. 16, 2025 Penberthy Dep. Tr.); Dkt. No. 180-8 at 3-4 (Oct. 31, 2025 Eugenio Dep. Tr.); Dkt. No. 181-2 at 3-4 (Oct. 29, 2025 Zrebiec Dep. Tr.).) Chevron asserts "none of the Primary Insurers' pre-litigation coverage correspondence asserted that Chevron's war risks coverage cannot apply without a declared war between the United States and Iran." (Dkt. No. 180-17 at 16.)

Chevron has not shown it could not have earlier brought counterclaims involving Primary Insurer's declared war position. Chevron's initial and amended counterclaims describe a September 26, 2023 letter from Primary Insurers including "Primary Insurers' position that the Primary Policy would cover Iran's actions only in a declared 'war,'" which was "contrary to Chevron's reasonable expectations of coverage." (Dkt. No. 17 at 35 ¶ 61 (initial counterclaims); Dkt. No. 109 at 33 ¶ 60 (amended counterclaims); *see also* Dkt. No. 190-8 at 4, 7, 9 (September 26, 2023 letter).) So, Chevron had at least some basis to believe (1) the Primary Insurers construed the Policy as only covering actions in a declared war when filing its first and amended counterclaims, and (2) Chevron reasonably held different expectations of coverage. *See* Fed. R. Civ. P. 11(b)(3) (by filing pleadings with a court, the lawyer represents "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery"). Chevron was also on notice of Primary Insurers' position because Zurich sent letters to Chevron on June 21, 2023; September 26, 2023; and January 5, 2024 reiterating their position a war effort or declaration was required for coverage under the Policy. (Dkt. No. 190-7 at 4 (June 21, 2023 letter stating seizure does not qualify as a covered "war risk" because it "was not done in furtherance of a war effort"); Dkt. No. 190-8 at 6 (Sept. 26, 2023 letter stating "the War Risks Policy does not apply to cargo seizures outside the context of war"); Dkt. No. 190-9 at 2 (Jan. 5, 2024 letter stating "the seizure was not done in furtherance of a war effort").)

So, Primary Insurers informed Chevron about their position as to a declared war or war effort requirement before this case began, much less before the January 2025 deadline for

amending its counterclaims passed.  To the extent Chevron argues it was lured into thinking non-war seizures were covered despite Primary Insurers' statements to the contrary, Chevron could have asserted this theory at least when it amended its pleadings after the deadline the first time. Primary Insurers' position as to a declared war requirement is therefore not new information providing good cause to amend after the deadline.

Chevron's insistence its initial and amended complaint allegations regarding Primary Insurers' position as to a declared war are irrelevant because Primary Insurers' answer denied Chevron's allegations is unpersuasive.  Primary Insurers "aver[ed] that Primary Insurers have properly denied Chevron's claim for coverage under the Primary Policies."  (Dkt. No. 114 ¶ 60.) The Primary Insurers denied Chevron's allegation that "[i]n a September 26, 2023 letter, the Primary Insurers, yet again, blatantly ignored the coverage provided in the Primary Policy," and "[t]he Primary Insurers' position that the Primary Policy would cover Iran's actions only in a declared 'war' is based on a deliberate misreading of the language of the Policy and the law, is contrary to Chevron's reasonable expectations of coverage, and has been asserted in bad faith." (Dkt. No. 109 at 33 ¶ 60; Dkt. No. 114 ¶ 60.)  This denial cannot reasonably be read as denying the existence of a declared war position.

### B.    The 48 Hours' Notice Cancellation Condition

Chevron was also aware of the policy condition allowing Primary Insurers to cancel coverage with 48 hours' notice in the event of war before the deadline to amend pleadings. The Policy itself states: "This insurance may be cancelled by either party upon forty-eight hours written, telegraphic or telefaxed notice to the other party."  (Dkt. No. 192-13 at 82 ¶ 12.)  And Chevron also knew—at least before filing its amended counterclaims on May 6, 2025—Primary Insurers had cancelled War Risks Policies with 48-hour notice.  On March 24, 2025, Zurich produced an email confirming 48-hour cancellations had been issued to other insureds, showing execution of the policy.  (Dkt. No. 180-6; *see also* Dkt. No. 190-12 at 16.)  Primary Insurers had also cancelled Chevron's war risk coverage with 48-hours' notice in other regions, including, in 2022, in "the territorial waters of Russia or Ukraine."  (Dkt. No. 180-17 at 11.)  And, Chevron's proposed amended counterclaims quote a Notice of Cancellation for the Gulf of Oman it received

United States District Court
Northern District of California

in 2019, which occurred "[p]ursuant to the 48-hour cancellation clause." (Dkt. No. 181-4 ¶¶ 36-37.) Chevron's 30(b)(6) representative also acknowledged it monitored the insurance industry in 2019 and knew similar cancellations had occurred. (*See* Dkt. No. 192-14 at 17-18.)

So, although Chevron may have learned more about 48-hour notice clauses through deposition or email production, Chevron knew or should have known about the clauses far earlier, and the 48-hours' notice cancellation condition is not new information providing good cause for Chevron to amend after the deadline.

### C.    Rule 9(b) Specificity

Chevron also contends "even if [it] could have speculated about the Primary Insurers' fraudulent motives when it filed its Counterclaim and Amended Counterclaim, the fraud was not revealed with the requisite Rule 9(b) specificity until after the Primary Insurers' witnesses were deposed." (Dkt. No. 195-6 at 11-12.) *See Tofasco of Am., Inc v. Atico Int'l, U.S.A.*, No. 07-CV-4120 ABC (JWJx), 2008 WL 11342850, at *2 (C.D. Cal. Apr. 24, 2008) ("Defendants acted reasonably and diligently in obtaining sufficient evidence of the claim to satisfy Rule 9(b) before moving to amend."). The Court disagrees. In *Kamal v. Eden Creamery*, *LLC*, 88 F.4th 1268 (9th Cir. 2023), the Ninth Circuit rejected the plaintiffs' similar argument. *Id.* at 1279. There, the plaintiffs sought leave to incorporate a new fraud by omission theory after the deadline to amend its pleadings based on newly discovered documents. *Id.* at 1278. The Ninth Circuit agreed with the district court although new "documents allegedly established the core of Plaintiffs' new fraud theory. . . . it had been 'clear from the outset' of the case that '"shrinkage" would be a key issue in one way or another,'" so the existence of a fraud by omission theory was not new. *Id.* at 1278-79. So too here: the "key issue" underlying Chevron's new claim—differing understandings of what the war risk policy covered—"had been clear from the outset of the case," even if the new discovery allowed Chevron to flesh out its arguments. *Id.* Furthermore, as in *Kamal*, Chevron does not explain the four-month gap between discovering the basis for fraud and misrepresentation claims in its September 11, 2025 deposition of Mr. Kazanjian and its January 13, 2025 motion for leave to amend. *Compare id.* at 1278 (affirming district court's finding that plaintiffs were not diligent because they "'failed to account for the five months' between receiving the documents

and filing their motion to amend"), *with Tofasco of Am., Inc.*, 2008 WL 11342850, at *2 (finding good cause because "Defendants have [] shown they acted diligently to discover . . . the key evidence" and "the Motion was filed within a reasonable time of [] discovery").

### D.    Prejudice to the Primary Insurers

The Court, in its discretion, also denies leave to amend because to do so at this late date would prejudice the Primary Insurers. "[A] court may take into account any prejudice to the party opposing modification of the scheduling order." *In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d at 737. Here, granting Chevron's belated amendment will delay the litigation and require the Court to re-open discovery and postpone trial, prejudicing the Primary Insurers. *See TrustLabs, Inc. v. Jaiyong*, No. 21-CV-02606-CRB, 2024 WL 1354486, at *8 (N.D. Cal. Mar. 30, 2024) ("The second, related basis for concluding that TrustLabs will be prejudiced is that Jaiyong filed this motion long after expert discovery closed and shortly before the close of fact discovery."). "Putting the [opposing party] through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (quotation marks omitted) (citing *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir.1989)); *see also Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming district court's denial of motion to amend filed two weeks before discovery deadline given undue delay and prejudice when "[a]llowing the motion would have required re-opening discovery, thus delaying the proceedings").

Chevron does not dispute additional discovery is necessary, but instead argues it can be limited. Chevron offers "to extend the case schedule by 60 days to accommodate whatever discovery the Primary Insurers may serve related to Chevron's new claims." (Dkt. No. 180-17 at 18.) But the Primary Insurers contend "[to] fully flush out Chevron's new theories of fraud and misrepresentation, the Primary Insurers would likely need to reissue written discovery and re-depose many of the fact witnesses," and potentially others. (Dkt. No. 190-12 at 19.) Because Chevron is "[a]dding an entirely new theory to the case that is contrary to the parties' focus to date," substantial discovery would be required on "the element of detrimental reliance," so "fact

United States District Court
Northern District of California

discovery would have to be pushed well beyond February, rendering the current schedule wholly untenable." (*Id.* at 20.) Therefore, the "burden of necessary future discovery" for "additional claims [which] advance different legal theories and require proof of different facts" would prejudice the Primary Insurers. *See Jackson*, 902 F.2d at 1387-1388.

So, prejudice to the Primary Insurers is inevitable, providing an additional rationale for denying Chevron's motion under Rule 16(b). Because Chevron has not met the Rule 16(b) requirement, a Rule 15(a) analysis is not necessary. *See Johnson*, 975 F.2d at 608-09.

## II. SEALING MOTIONS

There is a right of public access to judicial records and documents. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). In considering motions to seal, "a strong presumption in favor of access is the starting point." *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (cleaned up). So, parties seeking to seal judicial records relating to motions that are "more than tangentially related to the underlying cause of action," *Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1099 (9th Cir. 2016), bear the burden of overcoming the presumption of access with "compelling reasons supported by specific factual findings . . . that outweigh the general history of access and the public policies favoring disclosure," *Kamakana*, 447 F.3d at 1178-79 (cleaned up). However, records attached to "nondispositive motions" which are "not related, or only tangentially related, to the merits of a case," are not subject to the strong presumption of access and must instead meet a lower "good cause" standard. *See Ctr. for Auto Safety*, 809 F.3d at 1098-99.

In addition, under Civil Local Rule 79-5, sealing is only permitted where the parties have established "the applicable legal standard and the reasons for keeping a document under seal, including an explanation of: (i) the legitimate private or public interests that warrant sealing; (ii) the injury that will result if sealing is denied; and (iii) why a less restrictive alternative to sealing is not sufficient." *See* N.D. Cal. Civ. L.R. 79-5(c)(1). Civil Local Rule 79-5 also requires the parties to "narrowly tailor[]" their requests only to the sealable material. *Id.* at 79-5(c)(3). Thus, although sometimes it may be appropriate to seal a document in its entirety, whenever possible a party must redact. *See Kamakana*, 447 F.3d at 1183 (noting a preference for redactions so long as they "have

United States District Court
Northern District of California

the virtue of being limited and clear").

Pending before the Court are six sealing motions from both Primary Insurers and Chevron. (Dkt. Nos. 180, 181, 182, 190, 191, 195.)  The parties seek to seal a proposed amended complaint, a motion for leave to file an amended complaint, and related records.  Because "[a] complaint is 'more than tangentially related to the underlying cause of action,' . . . the Court applies the 'compelling reasons' standard to the instant motions to seal."  *Reyna v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2018 WL 1400513, at *1-2 (N.D. Cal. Mar. 20, 2018) (quoting *Ctr. for Auto Safety*, 809 F.3d at 1099) (citing *Ponomarenko v. Shapiro*, No. 16-CV-02763-BLF, 2017 WL 3605226, at *2 (N.D. Cal. Aug. 21, 2017); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2013 WL 5366963, at *2 (N.D. Cal. Sept. 25, 2013); *Dunbar v. Google, Inc.*, No. 12-CV-03305-LHK, 2013 WL 4428853, at *2 (N.D. Cal. Aug. 14, 2013); *In re NVIDIA Corp. Derivative Litig.*, 06-CV-06110-SBA, 2008 WL 1859067, at *3 (N.D. Cal. Apr. 23, 2008); *Nucal Foods, Inc. v. Quality Egg LLC*, No. 10-CV-03105-KJM, 2012 WL 260078, at *2 (E.D. Cal. Jan. 27, 2012)).

### A.    Chevron's Sealing Requests

| Primary Insurers' Administrative Motion to Seal Chevron's and Primary Insurers' Material in its Opposition to Chevron's Motion (Dkt. No. 191) | | | |
|---|---|---|---|
| **Designating Party** | **Confidential Material** | **Reasons Proffered for Sealing** | **Ruling on Motion** |
| Chevron | Dkt. No. 191-3 (Gross Decl. Ex. 9: CHEVRON-ADVANTAGE-SWEET14078) | Chevron releases its claim of confidentiality. | **DENIED** because Chevron does not object to unsealing. |
| Chevron | Dkt. No. 191-4 (Gross Decl. Ex. 10: CHEVRON-ADVANTAGE-SWEET0013005) | Although Chevron releases its claim of confidentiality, Primary Insurers seek to seal the document as including "confidential claims adjustment practices."  (Dkt. No. 202 at 4.) | **DENIED** because Chevron does not object to unsealing without prejudice to Primary Insurers' subsequent motion to seal portions of the document with compelling reasons for sealing. |
| Chevron | Dkt. No. 191-5 (Gross Decl. Ex. 15: Excerpts of Sarah Thompson Deposition Transcript, pgs. 179-180) | Pages 179-180 contain confidential information related to Chevron's security practices and government security partners for vessels at sea which, if disclosed, could present a security risk | **GRANTED**.  Protecting Chevron's security practices is a compelling reason, and Chevron has narrowly tailored its request.  *See Music Grp. Macao Com. Offshore Ltd. v. Foote*, No. |

| | | for Chevron's employees and affiliates. | 14-CV-03078-JSC, 2015 WL 3993147, at *6 (N.D. Cal. June 30, 2015). |
|---|---|---|---|
| Chevron | Dkt. No. 191-6 (Gross Decl. Ex. 16: CHEVRON-ADVANTAGE-SWEET14080) | Chevron releases its claim of confidentiality. | **DENIED** because Chevron does not object to unsealing. |
| Chevron | Dkt. No. 191-1 (Primary Insurers' Opposition Brief at 9:20-22, 23:22-23, and 24:1-7) | Chevron releases its claim of confidentiality, but Primary Insurers seek to seal 9:20-22 because it discusses Dkt. No. 191-4. | **DENIED** because Chevron does not object to unsealing without prejudice to Primary Insurers' subsequent motion to seal portions of the document with compelling reasons for sealing. |

## B.   Primary Insurers' Sealing Requests

As to Primary Insurers' confidential information, Chevron filed administrative motions regarding sealing of Primary Insurers' information at Docket Nos. 180, 181, 182, and 195; Primary Insurers filed a motion to seal information at Docket No. 190; and Primary Insurers made additional sealing requests at Docket No. 202.  Rather than explain compelling reasons for sealing each document, Primary Insurers describe broad categories of purported harms if groups of documents are unsealed.  This approach is insufficient to meet their sealing burden.  *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the [good cause] test." (quotation marks and citation omitted)).  Primary Insurers also no compelling reason to seal information which is already filed publicly on the docket.  *See Upper Deck Co. v. Pixels.com, LLC*, No. 24-CV-0923-BAS-DEB, 2025 WL 2163996, at *4 (S.D. Cal. July 28, 2025) ("There cannot be a compelling reason to hide the entirety of these documents from the public when the existence and certain details of the agreements are already in the public sphere.").  In addition, Primary Insurers ask to seal exhibits in their entirety rather than "narrowly tailor[ing]" their requests with redactions.  *See* N.D. Cal. Civ. L.R. 79-5(c)(3); *see also Kamakana*, 447 F.3d at 1183 (noting a preference for redactions).

So, the Court **DENIES** Primary Insurers' sealing requests without prejudice.  Any renewed requests shall be filed as a single omnibus motion, which clearly identifies the documents subject

to the motion, proposed redaction, and includes the docket number of the original motion seeking to seal the document. Primary Insurers' subsequent motion should include proposed redactions, if any, as to this Order. Primary Insurers' renewed sealing motion shall be filed by March 19, 2026.

### CONCLUSION

Because Chevron has not shown good cause, it is not entitled to amendment under Rule 16(b). So, the Court DENIES Chevron's second motion for leave to amend and supplement its counterclaims.

This Order disposes of Docket Nos. 180, 181, 182, 183, 190, 191, and 195.

**IT IS SO ORDERED.**

Dated: March 6, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

13