JAMES P. KOELZER (CA SBN 183760)
james.koelzer@clydeco.us
DAVID KTSHOZYAN (CA SBN 299414)
david.ktshozyan@clydeco.us
**CLYDE & CO US LLP**
355 S. Grand Avenue, Suite 1400
Los Angeles, California 90071
Telephone: (213) 358-7600
Facsimile: (213) 358-7650

Attorneys for Counterclaim Defendants,
*ROYAL AND SUN ALLIANCE INSURANCE LTD., et al.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY, and GREAT AMERICAN INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>CHEVRON U.S.A. INC. d/b/a Chevron Products Company (a division of Chevron U.S.A. Inc.) and CHEVRON CORPORATION,<br><br>Defendants/Counterclaim Plaintiffs.<br><br>v.<br><br>ROYAL AND SUN ALLIANCE INSURANCE LTD.; LLOYD'S UNDERWRITER SYNDICATE NO. 1414 ASC; LLOYD'S | Case No. 3:24-cv-02733-JSC<br><br>[Hon. District Judge Jacqueline Scott Corley]<br><br>**COUNTERCLAIM DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**<br><br>*[Filed Concurrently with Supporting Declarations of Malcolm Kirkbride and David Ktshozyan; and [Proposed] Order]*<br><br>**Date:** July 14, 2026<br>**Time:** 10:00 a.m.<br>**Location:** Courtroom 8<br><br>**Trial Date:** September 14, 2026 |

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

UNDERWRITER SYNDICATE NO. 1225 AES; LLOYD'S UNDERWRITER SYNDICATE NO. 2232 AWH; LLOYD'S UNDERWRITER SYNDICATE NO. 1274 AUL; LLOYD'S UNDERWRITER SYNDICATE NO. 0609 AUW; LLOYD'S UNDERWRITER SYNDICATE NO. 2987 BRIT; LLOYD'S UNDERWRITER SYNDICATE NO. 4444 CNP; LLOYD'S UNDERWRITER SYNDICATE NO. 2488 CGM; LLOYD'S UNDERWRITER SYNDICATE NO. 3000 MKL; NAVIUM MARINE LIMITED; and FIDELIS UNDERWRITING LIMITED,

Counterclaim Defendants.

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on July 14, 2026 at 10 a.m., or as soon thereafter as this matter may be heard, in Courtroom 8 of the above-entitled Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102, before the Honorable Judge Jacqueline Scott Corley of the United States District Court for the Northern District of California, Counterclaim Defendants, Royal And Sun Alliance Insurance Ltd.; Lloyd's Underwriter Syndicate No. 1414 ASC; Lloyd's Underwriter Syndicate No. 1225 AES; Lloyd's Underwriter Syndicate No. 2232 AWH; Lloyd's Underwriter Syndicate No. 1274 AUL; Lloyd's Underwriter Syndicate No. 0609 AUW; Lloyd's Underwriter Syndicate No. 2987 BRIT; Lloyd's Underwriter Syndicate No. 4444 CNP; Lloyd's Underwriter Syndicate No. 2488

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

CGM; Lloyd's Underwriter Syndicate No. 3000 MKL (the "Excess Insurers"), will and hereby do move this Court for summary judgment or partial summary judgment against Defendant/Counterclaim Plaintiffs, Chevron U.S.A. Inc. d/b/a Chevron Products Company and Chevron Corporation's (collectively, "Chevron") on its claims for breach of contract, bad faith, and declaratory relief.

The Excess Insurers are entitled to summary judgment under Federal Rule of Civil Procedure 56 because, as a matter of law, Chevron cannot establish entitlement to coverage under the Marine Cargo or War Risks sections of the Primary Policy and the Excess Policy, which expressly follows form to the Primary Policy in all respects, claims included. Absent coverage under the Primary Policy, Chevron's breach of contract and declaratory relief claims against the Excess Insurers necessarily fail, and Chevron cannot establish a viable claim for bad faith.

There is no genuine dispute of material fact. Chevron cannot establish the essential elements of its causes of action for breach of contract or declaratory relief as a matter of law. And because Chevron cannot establish that any benefits were due—or that the Excess Insurers engaged in unreasonable claim handling—its claim for breach of the implied covenant of good faith and fair dealing likewise fails. The existence of a bona fide and complex coverage dispute independently bars bad faith liability under the "genuine dispute" doctrine.

///

///

///

///

///

///

///

///

///

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

This motion is based on this Notice of Motion and Motion for Summary Judgment, the Memorandum of Points and Authorities, the concurrently filed Declaration of Malcolm Kirkbride with supporting exhibits, the pleadings and papers previously filed in this action, and such other arguments or evidence that may be presented in connection with the hearing of this motion.

Dated: April 20, 2026

**CLYDE & CO US LLP**

By: */s/ James P. Koelzer*
James P. Koelzer
David Ktshozyan

Attorneys for Counterclaim Defendants,
*ROYAL AND SUN ALLIANCE INSURANCE LTD., et al.*

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 8
II. FACTUAL BACKGROUND ........ 9
A. The Policies ........ 9
B. The Seizure of the *Advantage Sweet* and Subsequent Claim ........ 10
C. The Commencement of Litigation ........ 13
III. LEGAL STANDARD ........ 14
A. The Applicable Standard ........ 14
B. Interpretation of Insurance Contracts ........ 14
IV. LEGAL ARGUMENT ........ 15
A. Chevron Cannot Establish Breach or Damages Absent Coverage Under the Primary Policy ........ 15
B. Chevron's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails as a Matter of Law ........ 16
1. Absent Coverage or Benefits Due, Chevron Cannot Maintain a Bad Faith Claim ........ 16
2. The Excess Insurers Conducted a Reasonable, Adequate, and Good-Faith Investigation Consistent with Their Excess Role ........ 16
3. The "Genuine Dispute" Doctrine Independently Bars Chevron's Bad Faith Claim ........ 19
C. Chevron Is Not Entitled to Declaratory Relief ........ 20
V. CONCLUSION ........ 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Annie, LLC v. Oregon Mutual Ins. Co.*,
82 Cal. App. 5th 919 (2022) .......... 15

*Bank of the West v. Sup. Ct.*,
2 Cal. 4th 1254 (1992) .......... 15

*California State Auto. Assn. Inter-Ins. Bureau v. Superior Court*,
184 Cal. App. 3d 846 (1985) .......... 17

*Campidoglio LLC v. Wells Fargo & Co.*,
870 F.3d 963 (9th Cir. 2017) .......... 15

*CDF Firefighters v. Maldonado*,
158 Cal. App. 4th 1226 (2008) .......... 16

*Celotex v. Catrett*,
477 U.S. 317 (1986) .......... 15

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*,
90 Cal. App. 4th 335 (2001) .......... 18, 20

*Egan v. Mut. of Omaha Ins. Co.*,
24 Cal. 3d 809 (1979) .......... 18

*Essex Marina City Club, L.P. v. Cont'l Cas. Co.*,
2011 WL 1753906 (N.D. Cal. May 9, 2011) .......... 21

*Love v. Fire Ins. Exch.*,
221 Cal. App. 3d 1136 (1990) .......... 17, 18

*Maffei v. Northern Ins. Co. of New York*,
12 F.3d 892 (9th Cir. 1993) .......... 15

*McMillin Homes Constr. v. Nat'l. Fire & Marine Co.*,
35 Cal. App. 5th 1042 (2019) .......... 15

*Medina v. GEICO Indemnity Co.*,
8 Cal. App. 5th 251 (2017) .......... 15

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

*Montrose Chemical Corp. of Calif. v. Superior Court (Montrose III)*,
9 Cal. 5th 215 (2020) .......... 18

*Norris v. Pacific Indem. Co.*,
39 Cal. 2d 420 (1952) .......... 15

*North American Capacity Ins. Co. v. Claremont Liability Ins. Co.*,
177 Cal. App. 4th 272 (2009) .......... 18

*Othman v. Globe Indem. Co.*,
759 F.2d 1458 (9th Cir. 1985) .......... 18

*Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*,
161 Cal. App. 4th 184 (2008) .......... 16

*Richter v. Mut. of Omaha Ins. Co.*,
2007 WL 6723708 (C.D. Cal. Feb. 1, 2007) .......... 21

*Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*,
78 Cal. App. 4th 847 (2000) .......... 18

*Tyler v. Travelers Commercial Ins. Co.*,
499 F. Supp. 3d 693 (N.D. Cal. 2020) .......... 21

*United States v. Washington*,
759 F. 2d 1353 (9th Cir. 1985) .......... 21

*Waller v. Truck Ins. Exch.*,
11 Cal. 4th 1 (1995) .......... 17

*Wilson v. 21st Century Ins. Co.*,
42 Cal. App. 4th 713 (2007) .......... 18

**Statutes**

Cal. Civ. Code §§ 1638, 1639 .......... 15

**Other Authorities**

*Cal. Practice Guide: Insurance Litigation* (Rutter Group 2023) ¶ 8:177 .......... 18

Fed. R. Civ. P. 56(a) .......... 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Excess Insurers submit this motion for summary judgment or partial summary judgment mindful that the factual circumstances, coverage issues, and defenses arising under the Marine Cargo and War Risks sections of the Primary Policy have already been extensively briefed by the Primary Insurers.[1] Rather than duplicate those arguments, the Excess Insurers expressly incorporate by reference the Primary Insurers' briefing, including, among other things, their reliance on the "genuine dispute" doctrine as a complete defense to Chevron's claim for breach of the implied covenant of good faith and fair dealing.

Because the Excess Policy expressly follows form to the Primary Policy, the Excess Insurers acknowledge that they will be bound by this Court's ultimate determination as to whether coverage exists under the Primary Policy. That follow-form structure is dispositive of Chevron's claims against the Excess Insurers. If Chevron cannot establish coverage under the Primary Policy, its breach of contract and declaratory relief claims against the Excess Insurers necessarily fail as a matter of law. Chevron cannot maintain independent contractual claims against the Excess Insurers untethered from, or broader than, the Primary Policy itself.

This motion therefore focuses on the only claim Chevron purports to assert that is uniquely directed at the Excess Insurers, which is an alleged breach of the implied covenant of good faith and fair dealing. As a threshold matter, Chevron cannot maintain an action for bad faith against the Excess Insurers if there is no finding of coverage. Even if the Court ultimately rules in favor of Chevron on coverage, the "genuine dispute" doctrine bars coverage for Chevron's bad faith claim. Otherwise, Chevron's entire bad faith theory against the Excess Insurers is premised on the

[1] The Primary Insurers are Plaintiffs/Counterclaim Defendants Zurich American Insurance Company ("Zurich"), Liberty Mutual Insurance Company ("Liberty Mutual"), and Great American Insurance Company ("Great American").

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

assertion that the Excess Insurers failed to conduct an "adequate" or "thorough" investigation of its claim. The undisputed facts refute that assertion.

The Excess Insurers investigated the claim in a manner fully commensurate with their role as follow-form excess insurers even though they were excluded from substantive coverage discussions between Chevron and the Primary Insurers and were prevented from receiving key underlying coverage correspondence contemporaneously. Indeed, for months, the Excess Insurers were affirmatively impeded from obtaining those communications by a "White Waiver" arrangement to which they were not a party. Despite those limitations, the Excess Insurers actively sought information through the Primary Insurers and Chevron's broker, repeatedly requested underlying correspondence and updates, retained coverage counsel to evaluate their legal obligations under the Excess Policy, and ultimately adhered to the Primary Insurers' coverage position based on the explicit terms of the follow-form language in the Excess Policy. Inasmuch as the facts surrounding the seizure itself are largely undisputed, Chevron has not, and cannot, identify what more it expected the Excess Insurers to do under these circumstances.

## II. <u>FACTUAL BACKGROUND</u>

### A. The Policies

The Primary Insurers issued a combined Marine Cargo and War Risks insurance policy, numbered MMSF-23-5033, to Chevron for the coverage period effective April 1, 2023 to April 1, 2024 (the "Primary Policy"). (Dkt. No. 2-1 and 2-2). The Primary Policy provides limits of liability of $50 million for any one vessel, aircraft or conveyance. *Id.* The specific terms, conditions, and exclusions applicable to Chevron's claim are detailed at length in the Primary Insurers' briefing and are incorporated herein by reference.

The Excess Insurers issued an "Excess of Loss Open Cover" insurance policy, numbered B0509MARCW2350146, to Chevron for the same coverage period (the

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

"Excess Policy").[2] (Dkt. No. 17-2); (*see also* Declaration of Malcolm Kirkbride in Support of Counterclaim Defendants' Motion for Summary Judgment ["Kirkbride Decl."] at ¶ 3). The Excess Policy provides limits of liability of $150 million for any one vessel, aircraft or conveyance, excess of $50 million for any one vessel, aircraft or conveyance. (Dkt. No. 17-2 at p. 7).

Per the "Conditions" section of the Excess Policy's details, the Excess Policy follows form to the Primary Policy. *Id*. It states, in pertinent part:

> **CONDITIONS:** As per Underlying Policy MMSF-19-4606 (or renewal thereof) and to follow the Underlying Policy MMSF-19-4606 (or renewal thereof) in all respects, claims included.

*Id.*

The Excess Policy incorporates a California choice-of-law and jurisdiction provision. *Id.* at p. 12.

### B. The Seizure of the *Advantage Sweet* and Subsequent Claim

On April 27, 2023, Iranian Navy commandos boarded and seized the *Advantage Sweet* shipping vessel chartered by Chevron to transport crude oil from Kuwait to Houston, Texas. (Dkt. No. 1 at ¶¶ 47-48).

On or around May 2, 2023, Chevron, through its broker, Marsh USA Inc. ("Marsh"), provided a precautionary notice of potential loss <u>solely to the Primary Insurers</u>. Kirkbride Decl. at ¶ 4, Ex. A. On June 21, 2023, the Primary Insurers—led by Zurich—issued a coverage letter setting forth their initial reservation of rights. Kirkbride Decl., Ex. F. Chevron responded on August 18, 2023. Kirkbride Decl., Ex. C.

[2] The Excess Policy is led by Royal and Sun Alliance Insurance Ltd. ("RSA") as the overall lead, and by Ascot Insurance and Chubb as the first and second lead for the Lloyd's of London subscribing syndicates. (Dkt. No. 17-2 at pp. 34 and 44-48); *see also* Kirkbride Decl. at ¶ 3.

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

It was not until August 22, 2023, Chevron, again through Marsh, notified the Excess Insurers of the potential loss for the first time. *Id.* at ¶ 5, Ex. B. The initial notice to the Excess Insurers included a copy of Chevron's August 18, 2023 letter. *Id.* at ¶ 6. The notice, however, did not include the Primary Insurers' initial June 21, 2023 letter setting forth their reservation of rights. *Id.* On August 29, 2023, RSA—as overall lead—asked Marsh for Zurich's original letter along with "full supporting documents" and for any "pertinent updates/developments occurring since original seizure and present day." *Id.* at ¶ 7, Ex. D. On or around September 4, 2023, Marsh provided the Excess Insurers with the initial loss notice to the Primary Insurers, initial letter from Zurich as well as certain shipping documents related to the *Advantage Sweet*. *Id.* at ¶ 8, Ex. E and F. On September 25, 2023, Marsh also provided invoicing for the cargo onboard the *Advantage Sweet* reflecting the valuation noted in the August 18, 2023 letter from Chevron's counsel. *Id.* at ¶ 9, Ex. G.

On September 26, 2023, the Primary Insurers responded to Chevron's August 18, 2023 letter. *Id.* at ¶ 10, Ex. H. On September 27, 2023, Marsh provided the Excess Insurers with a copy of the Primary Insurers' September 26 letter. *Id.* at ¶ 11, Ex. I.

On November 8, 2023, Chevron, Marsh, and Zurich participated in an in-person conference attended by their respective principals to discuss their respective coverage positions under the protection of a "White Waiver." *Id.* at ¶ 12, Ex. J. The Excess Insurers were not informed of or invited to that meeting. *Id.* In the meantime, upon receiving the underlying coverage correspondence and discussing amongst themselves, the Excess Insurers retained coverage counsel on or around November 10, 2023 to advise them regarding their legal obligations under the Excess Policy. *Id.* at ¶ 13, Ex. K.

On December 14, 2023, Chevron provided the Primary Insurers with a response to their September 26, 2023 letter. *Id.* at ¶ 14, Ex. L. The Primary Insurers responded to Chevron's letter on January 5, 2024. *Id.* at ¶ 15, Ex. M. The Excess Insurers were not provided these correspondences contemporaneously. *Id.* at ¶ 16.

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

On January 3, 2024, Anthony Blackman—the Senior Marine Cargo Claims Adjuster at RSA assigned to the claim—wrote to Christopher Perfect—Zurich's Senior Marine Claims Specialist assigned to the claim—asking whether Zurich had received a response to its coverage position letter of September 26, 2023. *Id.* at ¶ 17, Ex. N. That same day, Mr. Perfect responded describing the meeting that Zurich had with Chevron in November 2023. *Id.* When Mr. Blackman asked if he could obtain copies of the coverage correspondence that had been exchanged, Mr. Perfect stated that there was a "non-disclosure agreement" in place, likely referencing the "White Waiver" agreement. *Id.* Mr. Blackman then enlisted Marsh's help in obtaining the coverage correspondence exchanged between the parties since the November 2023 meeting. *Id.* at ¶ 18.

On January 29, 2024, Marsh informed Mr. Perfect that the Excess Insurers had inquired whether they could see the correspondence between Zurich and Chevron. *Id.* at ¶ 12, Ex. O. Marsh stated that Chevron had provided their approval to release the correspondence under the "White Waiver" agreement, but that Marsh was seeking Zurich's approval as well. *Id.* at Ex. O. On February 12, 2024, having received no response, Marsh followed up on the request. Zurich requested a copy of the Excess Policy to determine if the Excess Policy followed form to the Primary Policy, which Marsh provided on that same day. *Id.* On February 20, 2024, Marsh again followed up on the Excess Insurers' request. *Id.* On February 21, 2024, Zurich agreed to release the communications. *Id.* On March 5, 2024, Marsh provided copies of the December 14, 2023 and January 5, 2024 letters exchanged between Chevron and Zurich. *Id.* at ¶ 20, Ex. P.

On or around March 6, 2024, Iranian port authorities confiscated the crude oil aboard the *Advantage Sweet* via a ship-to-ship transfer before releasing the vessel. (Dkt. No. 1 at ¶¶ 52-53). On March 13, 2024, Marsh informed the Excess Insurers of the ship-to-ship transfer of the cargo off the *Advantage Sweet*. Kirkbride Decl. at ¶ 21, Ex. Q.

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

On or about April 5, 2024, Chevron submitted its Proof of Loss to the Primary Insurers. (Dkt. No. 2-3). The Proof of Loss set forth Chevron's claim for the lost cargo in the amount of $57,064,569.85. *Id.* On April 10, 2024, Marsh provided a copy of the April 5, 2024 Proof of Loss submitted by Chevron. Kirkbride Decl. at ¶ 22, Ex. R.

On April 22, 2024, Marsh, requested a "formal response" from RSA to Chevron's claim. *Id.* at ¶ 23, Ex. S. Marsh followed up on April 30, 2024. *Id.* at Ex. S. On that same day, Mr. Blackman responded as follows, "[g]iven the full follow status, we must make sure we're in line with Zurich and so we are coordinating with them. Will have response before deadline." *Id.*

On May 7, 2024, the Primary Insurers and their counsel issued two letters denying Chevron's claim set forth in the Proof of Loss. *Id.* at ¶ 24, Ex. T. Marsh provided copies of the May 7, 2024 letters to RSA on May 8, 2024. *Id.* at ¶ 25, Ex. U. On May 14, 2024, RSA reiterated that the Excess Policy "follows form to the Zurich American policy" and that RSA "will therefore continue to monitor Chevron's claim…" *Id.* at ¶ 26, Ex. V.

**C. The Commencement of Litigation**

On May 7, 2024, on the same day that the Primary Insurers issued their denial letter, the Primary Insurers initiated this action against Chevron. (Dkt. No. 1). The following day, they filed the operative First Amended Complaint. (Dkt. No. 2). On May 24, 2024, Marsh informed RSA and Ascot of the lawsuit filed by the Primary Insurers and provided a copy of the complaint. *Id.* at ¶ 27, Ex. W.

On May 30, 2024, Chevron filed its Answer and Counterclaims, asserting a declaratory relief claim against the Excess Insurers. (Dkt. No. 17). On June 26, 2024, the Excess Insurers answered Chevron's counterclaim, essentially adopting the Primary Insurers' position on coverage. (Dkt. No. 32).

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

On May 6, 2025, Chevron filed its Amended and Supplemental Counterclaims, asserting, in part, claims against the Excess Insurers for breach of contract and breach of the implied covenant of good faith and fair dealing. (Dkt. No. 109).

## III. LEGAL STANDARD

### A. The Applicable Standard

On summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Questions of law including the interpretation of contracts, statutes, and other writings" are appropriate for summary judgment. *Campidoglio LLC v. Wells Fargo & Co.,* 870 F.3d 963, 973 (9th Cir. 2017). The moving party has no burden to produce any evidence on elements of a claim on which the non-moving party will bear the burden of trial. *Celotex v. Catrett,* 477 U.S. 317, 323-25 (1986). The moving party can merely point out an absence of evidence to support any such element. *Id.* at 325; *Maffei v. Northern Ins. Co. of New York,* 12 F.3d 892, 899 (9th Cir. 1993). An insured has the burden of proving its claim falls within the scope of the policy's coverage grant, even when the insurer seeks summary judgment. *Medina v. GEICO Indemnity Co.,* 8 Cal. App. 5th 251, 259 (2017).

### B. Interpretation of Insurance Contracts

The principles governing the interpretation of insurance policies in California are well-settled. "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." *Bank of the West v. Sup. Ct.,* 2 Cal. 4th 1254, 1264 (1992). The language of a contract governs its interpretation. Cal. Civ. Code §§ 1638, 1639. Courts will not adopt a strained or absurd interpretation. *Apple Annie, LLC v. Oregon Mutual Ins. Co.,* 82 Cal. App. 5th 919, 929-930 (2022). When a provision in an insurance policy has been judicially construed, the judicial construction should be read into the policy. *McMillin Homes Constr. v. Nat'l. Fire & Marine Co.,* 35 Cal. App. 5th 1042, 1052-1053 (2019); *Norris*

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

*v. Pacific Indem. Co.,* 39 Cal. 2d 420, 424 (1952) ("insurance policy provisions should be given a meaning settled by judicial decision).

## IV. LEGAL ARGUMENT

### A. Chevron Cannot Establish Breach or Damages Absent Coverage Under the Primary Policy

Chevron's breach of contract claim against the Excess Insurers fails as a matter of law because it cannot establish the essential elements of that claim.

In California, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

Here, Chevron cannot establish breach or resulting damages because its alleged entitlement to benefits rests entirely on the existence of coverage. That issue has already been fully addressed in the Primary Insurers' briefing, which the Excess Insurers expressly incorporate by reference. For the same reasons detailed therein, there is no coverage for Chevron's alleged loss under the Marine Cargo or War Risks sections of the Primary Policy. Because the Excess Policy is expressly written on a follow-form basis, including with respect to claims, and affords no coverage broader than the Primary Policy, the absence of coverage under the Primary Policy is dispositive. *See Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*, 161 Cal. App. 4th 184, 189, fn. 2 (2008) ("A 'following form' policy incorporates the terms and conditions of another carrier's policy and provides the same scope of coverage as the underlying policy.").

Where no benefits are owed under the underlying policy, none can be owed under the follow-form excess policy, and Chevron's breach of contract claim against the Excess Insurers necessarily fails.

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

### B. Chevron's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails as a Matter of Law

#### *1. Absent Coverage or Benefits Due, Chevron Cannot Maintain a Bad Faith Claim*

Chevron's bad faith claim fails at the threshold because it cannot establish that any benefits were due under the Primary and Excess Policies.

Under California law, bad faith liability arises only when an insurer unreasonably withholds benefits due under the policy. *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). Where there is no contractual obligation to pay benefits, a bad faith claim cannot be sustained. *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 36 (1995); see also *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court*, 184 Cal. App. 3d 846, 849 (1985) ("no award for bad faith can be made without first establishing that coverage exists").

Here, Chevron's entitlement to benefits depends entirely on the existence of coverage under the Primary Policy, which, for the reasons set forth in the Primary Insurers' briefing and incorporated by reference, does not exist. In the absence of any benefits due under the Primary Policy—and, by extension, the follow-form Excess Policy—the Excess Insurers cannot, as a matter of law, be liable for bad faith.

#### *2. The Excess Insurers Conducted a Reasonable, Adequate, and Good-Faith Investigation Consistent with Their Excess Role*

Chevron does not allege that the Excess Insurers misrepresented policy terms, ignored the claim outright, concealed material facts, or adopted a coverage position inconsistent with the policy language. Instead, Chevron's bad faith theory against the Excess Insurers rests entirely on the flawed premise that they were required to conduct an "adequate" or "independent" investigation of Chevron's claim separate from the Primary Insurers. (Dkt. No. 109 at *Id.* at ¶ 67). That premise is contrary to both California law and the express terms of the Excess Policy, which not only follows

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

form to the Primary Policy as to coverage, but also mandates that the Excess Insurers follow the Primary Insurers "in all respects, claims included."

Under California law, the principal inquiry in a first-party bad faith claim is whether the insurer unreasonably withheld benefits due under the policy. *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). While unreasonableness is often a fact question, it becomes one of law where, as here, the evidence is undisputed and only one reasonable inference can be drawn. *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001). Courts assess reasonableness by examining the totality of the circumstances, including the adequacy of the insurer's investigation—one of the most critical factors bearing on good faith. *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 879 (2000); *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 819 (1979). But there is no rigid rule prescribing the scope or form an investigation must take. Rather, the dispositive inquiry is whether the insurer acted reasonably under the circumstances. *Wilson v. 21st Century Ins. Co.*, 42 Cal. App. 4th 713, 723 (2007). Importantly, a "thorough" investigation does not require perfection, and the mere existence of hypothetical additional steps that could have been taken does not establish bad faith. *Othman v. Globe Indem. Co.*, 759 F.2d 1458, 1464–65 (9th Cir. 1985).

Excess insurance "refers to indemnity coverage that attaches upon the exhaustion of underlying insurance coverage for a claim," and "provides coverage after other identified insurance is no longer on the risk." *Montrose Chemical Corp. of Calif. v. Superior Court (Montrose III)*, 9 Cal. 5th 215, 222 (2020) (internal quotation marks omitted); *North American Capacity Ins. Co. v. Claremont Liability Ins. Co.*, 177 Cal. App. 4th 272, 291 (2009). An excess insurer's coverage obligation does not arise until a defined level of loss is reached—commonly referred to as the policy's "attachment point." Croskey et al., *Cal. Practice Guide: Insurance Litigation* (Rutter Group 2023) ¶ 8:177.

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

Consistent with these principles, RSA, as the overall lead, appropriately took charge of monitoring and evaluating the claim. (Dkt. No. 17-2 at pp. 34 and 44-48); *see also* Kirkbride Decl. at ¶ 3. This conduct is fully consistent with the longstanding standards and practices of the London insurance market and with the Excess Insurers' role as follow-form excess carriers sitting $50 million above the ground floor of risk. *See* (Dkt. No. 17-2 at pp. 7 and 36-37). Moreover, as evident by the briefing of the Primary Insurers and Chevron, the material facts underlying the seizure of the *Advantage Sweet* and the confiscation of the cargo are not disputed, eliminating any basis for suggesting that further factual investigation by the Excess Insurers would have altered the coverage analysis in any respect.

Measured against these standards, the Excess Insurers' conduct was plainly reasonable. They were first notified of the potential loss in late August 2023—nearly four months after the seizure and well after the Primary Insurers had already issued a reservation of rights. *See* Kirkbride Decl. at ¶¶ 5-6, Ex. B. Within days, the Excess Insurers requested the Primary Insurers' initial coverage correspondence, supporting documentation, and updates regarding the status of the seizure and cargo. *Id.* at ¶ 7, Ex. D. They were excluded from substantive principal-to-principal discussions conducted under a "White Waiver" in November 2023 and were affirmatively prevented from obtaining key coverage correspondence, including the December 2023 and January 2024 letters, for several months. *Id.* at ¶¶ 12, 15-16, and 17-20, Ex. J, N-P.

Despite these constraints, upon receipt of the underlying coverage correspondence through the September 26, 2023 letter, the Excess Insurers retained coverage counsel on November 10, 2023 to advise them regarding their legal obligations under the Excess Policy. *Id*. at ¶ 13, Ex. K. And they continued requesting information from both the Primary Insurers and through Chevron's conduit for communications with the Excess Insurers, Marsh. *Id.* at ¶¶ 17-20, Ex. N-P. Following Zurich's denial of coverage on May 7, 2024 and the commencement of this action,

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

the Excess Insurers reiterated their position that the Excess Policy followed form to the Primary Policy and articulated that position in their responsive pleading after being named in Chevron's counterclaims. *Id.* at ¶ 24 and 26, Ex. T and V.

The only conduct Chevron can even remotely criticize is that the Excess Insurers did not issue a separate, formal coverage determination letter. But given the compressed timeline between the filing of the declaratory relief action, the assertion of counterclaims against the Excess Insurers, and the adoption of their follow-form position in a filed answer, that criticism does not suggest unreasonable conduct and falls squarely within accepted market practice, especially considering the Excess Insurers' status as excess insurers. *See* Declaration of David Ktshozyan, ¶ 3, Ex. A.

Chevron cannot identify any authority—and the Excess Insurers are aware of none—holding that an excess insurer acts in bad faith by monitoring a claim, seeking information from the primary insurer, retaining coverage counsel to advise on their obligations, and adopting the primary insurer's coverage position under a follow-form policy in the context of litigation. On this record, it is unclear what more the Excess Insurers could have or should have done, and the undisputed facts establish that their conduct was reasonable as a matter of law.

### 3. *The "Genuine Dispute" Doctrine Independently Bars Chevron's Bad Faith Claim*

Even if Chevron could identify some purported deficiency in the Excess Insurers' investigation (it cannot), the bad faith claim still fails under the "genuine dispute doctrine."

Under California law, "where there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of the dispute." *Chateau Chamberay*, 90 Cal. App. 4th at 347.

The applicability of the "genuine dispute" doctrine has already been fully briefed by the Primary Insurers, and that briefing is expressly incorporated herein by

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

reference. This case presents a complex coverage dispute turning on questions of policy interpretation and the application of undisputed facts to those policy terms—precisely the type of dispute for which the genuine dispute doctrine was intended to apply. Here, the existence of a bona fide coverage dispute independently forecloses Chevron's bad faith claim.

### C. Chevron Is Not Entitled to Declaratory Relief

Chevron's declaratory relief claim adds nothing independent to this action and therefore fails as a matter of law.

Declaratory relief is appropriate only where it serves a useful purpose in clarifying and settling the legal relations at issue. *United States v. Washington*, 759 F. 2d 1353, 1356–57 (9th Cir. 1985). Courts routinely dismiss declaratory relief claims that merely duplicate other causes of action seeking a determination of the parties' rights and obligations under the same contract. See *Richter v. Mut. of Omaha Ins. Co.*, 2007 WL 6723708, at *5 (C.D. Cal. Feb. 1, 2007) (granting summary judgment where declaratory relief was redundant). For this reason, "courts have dismissed companion claims for declaratory relief where the breach of contract claims resolved the dispute completely and rendered additional relief inappropriate." *Tyler v. Travelers Commercial Ins. Co.*, 499 F. Supp. 3d 693, 702 (N.D. Cal. 2020) (quoting *Davis v. Capitol Records LLC*, 2013 WL 1701746, at *3–4 (N.D. Cal. Apr. 18, 2013)); see also *Essex Marina City Club, L.P. v. Cont'l Cas. Co.*, 2011 WL 1753906, at *3–4 (N.D. Cal. May 9, 2011) (dismissing declaratory relief claim in an insurance coverage action where the requested declaration "add[ed] nothing" beyond the breach-of-contract claim).

Here, Chevron's declaratory relief cause of action is entirely redundant of its breach of contract claim, and because that claim fails, the declaratory relief claim necessarily fails as well and should be dismissed.

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

## V. CONCLUSION

Chevron's claims against the Excess Insurers fail as a matter of law. Because the Excess Policy follows form to the Primary Policy, Chevron's breach of contract and declaratory relief claims necessarily fail absent coverage under the Primary Policy, which does not exist for the reasons fully briefed by the Primary Insurers and incorporated herein by reference.

Chevron's bad faith claim is likewise barred. Where no benefits are due, there can be no bad faith. In any event, the undisputed record shows that the Excess Insurers acted reasonably and in good faith at all times, consistent with their role as follow-form excess insurers. The existence of a bona fide coverage dispute independently precludes bad faith liability under the genuine dispute doctrine.

Accordingly, summary judgment, or, at a minimum, partial summary judgment, should be entered in favor of the Excess Insurers on all claims.

Dated: April 20, 2026

**CLYDE & CO US LLP**

By: /s/ *James P. Koelzer*
James P. Koelzer
David Ktshozyan

Attorneys for Counterclaim Defendants,
*ROYAL AND SUN ALLIANCE INSURANCE LTD., et al.*

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

# CERTIFICATE OF SERVICE

Pursuant to 28 U.S.C. § 1746, I hereby certify that on April 20, 2026, I electronically filed the foregoing document entitled **COUNTERCLAIM DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

| | |
|---|---|
| Jonathan Gross<br>MOUND COTTON WOLLAN & GREENGRASS LLP<br>2200 Powell Street, Suite 1050<br>Emeryville, CA 94608<br><br>*Attorneys for Plaintiffs ZURICH AMERICAN INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY* | Telephone: 510-900-9371<br>Facsimile: 510-900-9381<br><br>Emails: jgross@moundcotton.com<br>awei@moundcotton.com<br>kmcandrews@moundcotton.com<br>brittany.devries@dentons.com<br>cbooth@wiggin.com<br>managing_clerks@moundcotton.com |
| Joseph G. Grasso<br>Two Liberty Place<br>WIGGIN AND DANA LLP<br>50 S. 16th Street, Suite 2925<br>Philadelphia, PA 19102<br><br>*Attorneys for Plaintiffs ZURICH AMERICAN INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY* | Telephone: 215-988-8312<br><br>Email: jgrasso@wiggin.com |
| Robert Brian Siebert<br>Dentons US LLP<br>1221 6th Avenue<br>New York, NY 10020 | Telephone: 212-398-4865<br><br>Email: brian.siebert@dentons.com |

| | |
|---|---|
| *Attorneys for Plaintiffs ZURICH AMERICAN INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY* | |
| Anthony P. Tatum<br>*(pro hac vice application to be filed)*<br>McGUIREWOODS<br>1075 Peachtree St. NE, 35th Floor<br>Atlanta, GA 30309<br><br>*Attorneys for Defendants and Counterclaim Plaintiffs CHEVRON U.S.A. INC. D/B/A CHEVRON PRODUCTS COMPANY AND CHEVRON CORPORATION* | Telephone: 404-443-5500<br>Facsimile: 404-443-5599<br>Email: ttatum@mcguirewoods.com |
| Mikaela Whitman<br>Kelsey D. Haines<br>McGUIREWOODS<br>1800 Century Park East, 7th Floor<br>Los Angeles, CA 90067-1501<br><br>*Attorneys for Defendants and Counterclaim Plaintiffs CHEVRON U.S.A. INC. D/B/A CHEVRON PRODUCTS COMPANY AND CHEVRON CORPORATION* | Telephone: 310-315-8200<br>Facsimile: 310-315-8210<br><br>Emails:<br>mwhitman@mcguirewoods.com<br>khaines@mcguirewoods.com<br>shicks@mcguirewoods.com<br>USDocket@mcguirewoods.com |
| Jenny Yi<br>McGUIREWOODS<br>201 Clay St., Suite 1300<br>San Francisco, CA 94111<br><br>*Attorneys for Defendants and Counterclaim Plaintiffs CHEVRON U.S.A. INC. D/B/A CHEVRON PRODUCTS COMPANY AND CHEVRON CORPORATION* | Telephone: 415-844-9944<br>Facsimile: 415-844-9922<br><br>Emails: jyi@mcguirewoods.com<br>cehat@mcguirewoods.com,<br>dmlamb@mcguirewoods.com,<br>USDocket@mcguirewoods.com |

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

CLYDE & CO US LLP
355 S. Grand Avenue, Suite 1400
Los Angeles, CA 90071
Telephone: (213) 358-7600

| | |
|---|---|
| Dylan M. Bensinger<br>McGUIREWOODS<br>201 North Tryon Street, Suite 3000<br>Charlotte, NC 28202<br><br>*Attorneys for Defendants and Counterclaim Plaintiffs CHEVRON U.S.A. INC. D/B/A CHEVRON PRODUCTS COMPANY AND CHEVRON CORPORATION* | Telephone: 704-343-2000<br>Facsimile: 704-343-2300<br><br>Email: dbensinger@mcguirewoods.com |
| Shari L. Klevens<br>Alanna Clair<br>Ryan Christine Evans<br>Dentons US LLP<br>1900 K Street, NW<br>Washington, DC 20006<br><br>*Attorneys for DENTONS US LLP* | Telephone: 202-496-7612<br><br>Emails: shari.klevens@dentons.com<br>alanna.clair@dentons.com<br>ryan.evans@dentons.com<br>lisa.crain@dentons.com |

Dated: April 20, 2026

**CLYDE & CO US LLP**

By: */s/ James P. Koelzer*
James P. Koelzer
David Ktshozyan