Shari L. Klevens, *pro hac vice*
shari.klevens@dentons.com
Alanna Clair, *pro hac vice*
alanna.clair@dentons.com
DENTONS US LLP
1900 K Street NW
Washington, D.C. 20006
Tel: (202) 496-7500

Jonathan Gross, State Bar No. 122010
jgross@moundcotton.com
MOUND COTTON WOLLAN & GREENGRASS LLP
2200 Powell Street, Suite 1050
Emeryville, California 94608
Tel: (510) 900-9371

Joseph Grasso, *pro hac vice*
jgrasso@wiggin.com
WIGGIN AND DANA LLP
50 S. 16th Street, Suite 2925
Philadelphia, PA 19102
Tel: (215) 988-8312

Attorneys for Plaintiffs/Counterclaim Defendants
ZURICH AMERICAN INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY and
GREAT AMERICAN INSURANCE COMPANY

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>CHEVRON U.S.A. INC. d/b/a Chevron Products Company and CHEVRON CORPORATION,<br><br>Defendants.<br><br>CHEVRON U.S.A. INC. et al., | Case No. 3:24-cv-02733-JSC<br><br>**PLAINTIFFS/COUNTERCLAIM DEFENDANTS' DAUBERT MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF DR. IAN M. RALBY**<br><br>**Date**: July 14, 2026<br>**Time**: 10:00 am<br>**Ctrm**: Courtroom 8<br><br>**Judge**: Hon. Jacqueline Scott Corley<br>**Complaint Filed**: May 7, 2024 |

Defendants/Counterclaim Plaintiffs,

v.

ROYAL AND SUN ALLIANCE INSURANCE LTD.; et al.,

Counterclaim Defendants.

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

## TABLE OF CONTENTS

I. NOTICE OF MOTION ....................1
II. INTRODUCTION ....................1
III. BACKGROUND ....................2
A. Chevron's Alleged Loss ....................2
B. Relevant Policy Provisions ....................2
C. Chevron Discloses Dr. Ralby ....................3
IV. LEGAL STANDARD ....................3
V. ARGUMENT ....................3
A. Dr. Ralby's Opinions are not Reliable ....................3
B. Dr. Ralby's Opinions about "Grey Zones" and "Hybrid Hostilities" Are Irrelevant in light of Policy Language That Requires "War" ....................5
C. Dr. Ralby is Not Qualified to Offer his Opinions ....................8
D. Dr. Ralby Improperly Offers Legal Conclusions on Ultimate Issues ....................10
VI. CONCLUSION ....................10

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beard v. United States Postal Serv.*,
No. 17-CV-03218-JCS, 2019 WL 257978 (N.D. Cal. Jan. 18, 2019) ..... 3

*Blockchain Innovation, LLC v. Franklin Res., Inc.*,
No. 21-CV-08787-TSH, 2024 WL 5483606 (N.D. Cal. Oct. 22, 2024) ..... 4, 8, 9

*Cooper v. Brown*,
510 F.3d 870 (9th Cir. 2007) ..... 3

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ..... 1, 5

*Dold v. Snohomish Cnty.*,
No. 2:20-CV-00383-JHC, 2023 WL 123335 (W.D. Wash. Jan. 5, 2023) ..... 10

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ..... 3, 4

*Lust By & Through Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594 (9th Cir. 1996) ..... 3, 5

*Luviano v. Multi Cable, Inc.*,
CV-15-05592, 2017 WL 3017195 (C.D. Cal. Jan. 3, 2017) ..... 4, 8, 9

*Panama Transp. Co. v. United States*,
155 F. Supp. 699 (S.D.N.Y. 1957), *aff'd*, 253 F.2d 758 (2d Cir. 1958) ..... 6

*Queen Ins. Co. of Am. v. Globe & Rutgers Fire Ins. Co.*,
282 F. 976 (2d Cir. 1922), *aff'd*, 263 U.S. 487 (1924) ..... 6

*Resin Coatings Corp. v. Fid. & Cas. Co. of N.Y*,
489 F. Supp. 73 (S.D. Fla. 1980) ..... 6

*SA Music LLC v. Apple, Inc.*,
592 F. Supp. 3d 869 (N.D. Cal. 2022) ..... 10

*Synergy Hematology-Oncology Med. Assocs. Inc. v. Abbott Labs., Inc.*,
No. 2:22-CV-01560-SPG-JEM, 2023 WL 3319218 (C.D. Cal. Mar. 15, 2023) ..... 5, 10

*United States v. Standard Oil Co. of N.J.*,
178 F.2d 488 (2d Cir. 1949), *aff'd sub nom. Standard Oil Co. of N.J. v. United States*, 340 U.S. 54 (1950) ..... 6

**Court Rules**

Fed. R. Evid. 702 ..........1, 5

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

## I. NOTICE OF MOTION

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on **July 14, 2026 at 10:00 am**, or on any other date provided by this Court, in Courtroom 8 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco CA 94102, Plaintiffs/Counterclaim Defendants ZURICH AMERICAN INSURANCE COMPANY ("Zurich"), LIBERTY MUTUAL INSURANCE COMPANY ("Liberty"), and GREAT AMERICAN INSURANCE COMPANY ("GAIC") (collectively, "Primary Insurers") will and hereby do move for an order to exclude the expert report and testimony of Dr. Ian M. Ralby.[1]

Primary Insurers respectfully request an order pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) to strike and exclude the entire expert report and testimony of Dr. Ian M. Ralby.

## II. INTRODUCTION

The Court should bar Dr. Ralby, Chevron's expert on maritime law, from offering the below-described expert opinions at trial in this case, and should ignore his opinions and testimony to the extent CHEVRON U.S.A. INC. d/b/a Chevron Products Company and CHEVRON CORPORATION (collectively "Chevron") seeks to rely on them at summary judgment. Dr. Ralby's opinions are inherently unreliable because he relies on terminology that appears to have been coined expressly to mirror the language of the Policy and is not otherwise used (in academia or otherwise) by any other person besides Dr. Ralby. He also opines that the seizure of the *Advantage Sweet* occurred in circumstances that were short of actual war, which opinions are immaterial for two reasons: (1) the Policy at issue here requires war for there to be coverage; and (2) Chevron's loss was actually the confiscation of its oil that occurred pursuant to court order eleven months ***after*** the seizure of the *Advantage Sweet*. Dr. Ralby's failure to consider either of those points – even though he reviewed both the Policy and Chevron's Proof of Loss – undermines his opinions. What is more, Ralby claims to be an expert on maritime law, but seeks to offer opinions on the United States/Iran

[1] Dr. Ralby's Expert Report (Dep. Ex. P-291 is attached hereto as Exhibit 1. Cited excerpts from the transcript of Dr. Ralby's March 24, 2026 deposition (Ralby Tr. at [_]") are attached hereto as Exhibit 2.

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

relationship that stray far beyond this proclaimed expertise and, at times, seeks to offer improper legal conclusions. As a result, Dr. Ralby should not be permitted to offer expert opinions.

## III. BACKGROUND

### A. Chevron's Alleged Loss

This case arises from an April 2023 incident in which the Iranian Navy intercepted and seized the *Advantage Sweet*, a marine vessel carrying crude oil owned by Chevon, while it was navigating international waters in the Gulf of Oman. (*See* Ex. 3 (Dep. Ex. D-35) (Am. C'Claim) ¶¶ 4-6.) Iran eventually confiscated the oil in March 2024 via a ship-to-ship transfer during which an Iranian court order was read aloud on the deck of the vessel to the ship master. Chevron claims losses that Chevron alleges are covered by an insurance policy that included Marine Cargo coverage and a War Risks form (collectively, the "Policy") subscribed to by the Primary Insurers. (*Id.* ¶ 58.) The Primary Insurers denied Chevron's claim. (*Id.* ¶¶ 58, 60.)

### B. Relevant Policy Provisions

The parties' dispute centers on whether Chevron's alleged losses are covered under the Policies. The War Risks Policy at issue, which was presented and drafted by Chevron's broker Marsh, uses the standard war risks language promulgated by the American Institute of Marine Underwriters ("AIMU"):

> 1.(a) This insurance is only against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea, arrests, restraints, detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war….

(Ex. 4 (Dep. Ex. D-3) at -0017225-26.)

The Primary Insurers maintain that Chevron's alleged losses with respect to the *Advantage Sweet* are not covered under the War Risks form because, among other reasons, there was no war or declaration of war between Iran and the United States in April 2023 and because the subsequent court-ordered confiscation of Chevron's oil was not "war-like" or done "in prosecution of hostilities."

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

### C. Chevron Discloses Dr. Ralby

On February 13, 2026, Chevron disclosed Ralby's Expert Report (the "Ralby Report" or "Ralby Rpt. ¶ [_]"). Ralby claims to be an expert on maritime law, which is a subject on which the Court needs no guidance in this case. Ralby further concedes that he is not an expert "in the field of US/Iran relations" (Ex. 2 (Ralby Tr.) at 177:17-20), but nonetheless purports to offer opinions concerning the "context of Iranian maritime hostilities" and an "analysis of the *Advantage Sweet* case in that context." (Ex. 1 (Ralby Rpt.) ¶ 4.) In sum, Ralby concludes that Iran's "hostility of Iran toward the *Advantage Sweet* should be considered a warlike taking at sea." (*Id.* ¶ 5.)

## IV. LEGAL STANDARD

Federal Rule of Evidence 702 "imposes a special obligation upon a trial judge to 'ensure that any and all [expert] testimony'" is both relevant and reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). Expert testimony is only relevant if it "will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (citing *Daubert*). A court should exclude expert testimony unless it is "convinced that it speaks clearly and directly to an issue in dispute in the case." *Beard v. United States Postal Serv.*, No. 17-CV-03218-JCS, 2019 WL 257978, at *2 (N.D. Cal. Jan. 18, 2019) (citations omitted). The "proponent of the expert" carries "the burden of proving admissibility" of the expert's testimony. *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

## V. ARGUMENT

### A. Dr. Ralby's Opinions are not Reliable

It is Dr. Ralby's opinion that "[t]he Advantage Sweet, a Marshall Islands flagged tanker, carrying a [sic] Chevron cargo was the victim of Iranian hybrid hostilities on 27 April 2023." (*E.g.*, Ex. 1 (Ralby Rpt.) ¶¶ 5, 6, 10, 18.) Dr. Ralby explains that "'hybrid hostilities'" is an "operational tool" that explains the meaning of war: "hybrid hostilities is fundamentally about a state using force of some sort against another state." (*Id.* ¶ 6; Ex. 2 (Ralby Tr.) at 113:13-16.) Although Dr. Ralby uses that term in quotes in his report, he is not actually quoting anything. Rather, Dr. Ralby admitted

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

at deposition that he invented the term "hybrid hostilities" – which in a stunning coincidence uses the Policy's terminology of "hostilities"[2] – and uses it to support his opinions. But the term is his alone:

> Q. Are you aware of any other entities or individuals besides yourself who have used the term hybrid hostilities to describe US and Iran relations?
>
> A. I don't.
>
> Q. Similarly, are you aware of any entities or individuals other than yourself who have used the term hybrid hostilities in any other context?
>
> A. I am not.

(Ex. 2 (Ralby Tr.) at 65:24-66:9, 63:24-64:5 ("Hybrid hostilities are a term that I have started to use to describe the kinetic aspects of hybrid aggression.").) Even the footnotes and sources that Dr. Ralby cites do not use the term "hybrid hostilities." (*See* Ex. 1 (Ralby Rpt.) ¶ 6 n.6.)[3] Dr. Ralby is not aware of any published articles that use the term "hybrid hostilities." (Ex. 2 (Ralby Tr.) at 65:13-66:9.) Dr. Ralby's use of a term that is unpublished, not known by others in his industry, and not commonly understood or accepted confirms that his opinions are not tested or supported by proper peer review or methodology. That also means that his opinions should not be admitted.

The language of Federal Rule of Evidence 702 "makes no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge." *Kumho Tire*, 526 U.S. at 147; *see also Luviano v. Multi Cable, Inc.*, CV-15-05592, 2017 WL 3017195, at *7 (C.D. Cal. Jan. 3, 2017). "To ensure reliability, the Court assesses the expert's reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-CV-08787-TSH, 2024 WL

---

[2] Dr. Ralby confirmed at his deposition that he reviewed the insurance Policy in this case in preparing his expert reports, even though he is not offering any opinions on coverage. (Ex. 2 (Ralby Tr.) at 75:2-17.)

[3] Rather, some of the sources Dr. Ralby relies on use the term "hybrid threat." (e.g. Ex. 1 (Ralby Rpt.) at nn.11, 15, 16, 18, 25.)

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

5483606, at *1 (N.D. Cal. Oct. 22, 2024) (cleaned up). Where an expert's methodology or terminology has not been published in peer-review literature or generally accepted, it is not reliable.

Dr. Ralby concedes that he has previously used the term "hybrid ***aggression***" in his work in the past, but has never previously used the term "hybrid ***hostilities***" in his writing. (Ex. 2 (Ralby Tr.) at 176:18-177:11 (emphasis added).) Dr. Ralby evidently decided to use a term - hybrid hostilities - to suggest that the term "hostilities" has a commonly-understood meaning other than how it is defined by the Policy terms and relevant case law. This is a transparent attempt to instruct the Court on how to apply the Policy to the facts of this case. *See Synergy Hematology-Oncology Med. Assocs. Inc. v. Abbott Labs., Inc.*, No. 2:22-CV-01560-SPG-JEM, 2023 WL 3319218, at *6 (C.D. Cal. Mar. 15, 2023) (expert's efforts to interpret the terms of a contract are especially improper where "the interpretation would go to the ultimate issue" of whether a party breached a contract). Thus, Dr. Ralby's opinions do not meet the *Daubert* standard. *See Lust*, 89 F.3d at 597 (a "very significant fact" in meeting the *Daubert* standards "is whether the expert has developed [his] opinions expressly for purposes of testifying. . . .") (internal quotations omitted); *see also id.* (barring expert because it was "not unreasonable to presume that [his] opinion . . . was influenced by a litigation-driven financial incentive"); Fed. R. Evid. 702, 2000 Adv. Committee Notes ("expert's testimony must be grounded in an accepted body of learning or experience in the expert's field").

### B. <u>Dr. Ralby's Opinions about "Grey Zones" and "Hybrid Hostilities" Are Irrelevant in light of Policy Language That Requires "War"</u>

As noted above, Dr. Ralby offers the opinion that the seizure of the *Advantage Sweet* was the result of "Iranian hybrid hostilities." He also opines that "hybrid hostilities" – the term he invented – fall "short of war" and "do not require war." (Ex. 2 (Ralby Tr.) at 63:17-64:8, 52:13-15.) Instead, it is Dr. Ralby's position (and his alone) that "hybrid hostilities" are "usually designed to try to not inspire a retaliation towards a full continued armed conflict." (*Id*. at 63:17-64:18 (emphasis added).) Dr. Ralby further opines that "hybrid hostilities are operational level phenomenon that could be either amid wartime or amid gray zone activity. So, that is not a phenomenon that is mutually exclusive with a traditional kinetic war." (*Id*. at 52:6-12.) In explaining that concept, he states that the seizure

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

of the *Advantage Sweet* occurred in a so-called "gray zone," which his report defines as the "limbo land between peace and war." (*Id.* at 229:7-10; Ex. 1 (Ralby Rpt.) ¶ 7.) He conceded at his deposition that, although his position is that the seizure of the *Advantage Sweet* occurred in a "gray zone," in that situation, the involved "states had stayed below the threshold of a declared armed conflict." (Ex. 2 (Ralby Tr.) at 229:11-15.) Thus, Dr. Ralby makes clear that neither of these academic terms – his term "hybrid hostilities" or the term "gray zone" – requires war. But this is a case about coverage under a War Risks form.

Indeed, the Policy in this case is "War Insurance" that insures "against War Risks only." It provides coverage "only against the risks of . . . seizure . . . and other warlike operations . . . in prosecution of hostilities . . . whether before or after declaration of war." (Ex. 4 (Dep. Ex. D-3) at -0017225-26.) An unbroken string of case law dating back a century confirms that these terms – "war risks," "warlike operations," and "prosecution of hostilities" – all require actual, ongoing war for there to be coverage.[4] Dr. Ralby also opines that hybrid hostilities are "always to achieve a political end." (Ex. 2 (Ralby Tr.) at 29:18-20.) But the Policy at issue here is not a political risk policy. Thus, even if Dr. Ralby's opinions were qualified or reliable, the fact remains that they are utterly irrelevant to a proceeding reviewing the terms of a Policy that requires "war."

In addition, Dr. Ralby's opinions focus almost exclusively on the seizure of the *Advantage Sweet* vessel, but not on the subsequent confiscation of Chevron's oil pursuant to a court order. This further underscores the irrelevance of his opinions because the seizure of the *Advantage Sweet* was

[4] *See, e.g.*, *Queen Ins. Co. of Am. v. Globe & Rutgers Fire Ins. Co.*, 282 F. 976, 979 (2d Cir. 1922), *aff'd*, 263 U.S. 487 (1924) ("hostilities" means "an actual operation, offensive or defensive, in the conduct of war," while "warlike operations" means "operations in time of war."); *United States v. Standard Oil Co. of N.J.*, 178 F.2d 488, 493 (2d Cir. 1949), *aff'd sub nom. Standard Oil Co. of N.J. v. United States*, 340 U.S. 54 (1950) (war risks policy that "expressly insures against war risks or all consequences of hostilities or warlike operations . . . extends only to perils due directly to some hostile action, military maneuver, or operational war danager [sic]"); *Panama Transp. Co. v. United States*, 155 F. Supp. 699, 705 (S.D.N.Y. 1957), *aff'd*, 253 F.2d 758 (2d Cir. 1958) ("warlike operations" requires the operations to be conducted during wartime); *Resin Coatings Corp. v. Fid. & Cas. Co. of N.Y*, 489 F. Supp. 73, 75 (S.D. Fla. 1980) ("[t]he War Risk policy also does not apply in the present case because the coverage is limited to the risks of war").

not Chevron's loss; the subsequent expropriation of its oil was. [redacted] (Ex. 5 (SUI Report) at -32721.) [redacted] (*Id.*; Ex. 6 (Rojas Dep.) at 38:1-40:9, 44:11-22, 92:24-93:13; Ex. 7 (Dep. Ex. P-190).) Although Dr. Ralby's opinions focus almost exclusively on the seizure of the *Advantage Sweet* (and his view that, while not "war," the seizure was part of "hybrid hostilities" in a "gray zone"), he conceded at his deposition that Chevron's Proof of Loss describes its purported loss as arising both out of the seizure of the *Advantage Sweet* and the subsequent confiscation of Chevron's oil "under color of an Iranian court order." (Ex. 2 (Ralby Tr.) at 215:9-216:12.) Dr. Ralby reviewed Chevron's Proof of Loss in forming his opinions (one of only seven documents from this litigation that Chevron had provided to him) (Ex. 1 (Ralby Rpt.) at App'x A), but confirmed that he largely ignored the confiscation in reaching the opinions, instead characterizing the confiscation by Iran court order as "just the end result. I don't know how it would inform my opinions." (Ex. 2 (Ralby Tr.) at 216:8-20, 219:10-220:1 (describing the confiscation as "a continuation of the force initially brought against the Advantage Sweet on the 27th of April").) The word "confiscation" (or "expropriation") never even appears in Dr. Ralby's report. Given that the seizure is not Chevron's loss, but occurred approximately one year prior to Chevron's loss, Dr. Ralby's opinions that the seizure occurred in a "gray zone" as part of "hybrid hostilities" are immaterial.

There are strategic reasons for Chevron to distance itself from the fact of confiscation. For instance, the ship-to-ship transfer and confiscation by Iran happened by appointment and without the use of weapons. The vessel master was instructed that he could be brought into court if he declined to participate in the ship-to-ship transfer, after which point a court order was read to the master (who wrote down everything he heard, which was sent back to Chevron).[5] None of these facts suggest

[5] *See* Primary Insurers' summary of undisputed material facts in their Motion for Summary Judgment, filed herewith.



MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

that the confiscation was a "warlike operation" or part of ongoing "hostilities." Moreover, "confiscation" is excluded by the Policy's Marine Cargo coverage and is not among the risks insured by the War Risks form; in short, a "confiscation" is not covered by the Policy under any provision. Thus, Chevron has every motivation to attempt to ignore those facts that are fatal to its coverage position, but it also underscores the lack of objectivity in Dr. Ralby's opinions.

### C. **<u>Dr. Ralby is Not Qualified to Offer his Opinions</u>**

To be qualified to testify as an expert under Rule 702, a witness must demonstrate a "sufficient nexus between h[is] educational and professional background and . . . the determinations" he intends to offer. *Luviano*, 2017 WL 3017195, at *10. A witness's "qualifications must be appropriate to the subject matter of the expert's testimony—an expert's opinions must have a reliable basis in the knowledge and experience of the relevant discipline." *Blockchain Innovation*, 2024 WL 5483606, at *9 (internal quotation omitted).

Here, Dr. Ralby's qualifications are not sufficiently tied to the subject matter of his purported opinions to be admissible under Rule 702. Dr. Ralby purports to be an expert "in maritime law and security. . . ." (Ex. 1 (Ralby Rpt.) ¶ 1.) He offers opinions about the requirements for war under "international law," opines on "maritime security" issues, and describes "what is happening at sea." (*E.g.*, Ex. 1 (Ralby Rpt.) ¶¶ 5, 20; Ex. 8 (Dep. Ex. P-292) (Ralby Rebuttal Rpt.) ¶ 3.) Dr. Ralby, who is a lawyer that previously worked for years in private practice, repeatedly refers to legal texts as the basis for his opinions. He relies heavily on the Newport Manual, the San Remo Manual, the laws of naval warfare, and other "treaties and conventions, some of the Hague Conventions, for example, the UN Convention on the Law of the Sea, and others" to inform whether there was a war at the time of the seizure. (*E.g.*, Ex. 2 (Ralby Tr.) at 143:21-144:21, 164:5-166:2, 183:20-186:10.) But the Court does not need an expert to regurgitate legal treatises that the Court can independently read. Nor does the Court need an academic analysis of whether there is war according to legal texts, completely devoid of the geopolitical context and the U.S.-Iran bilateral relationship.

Critically, Dr. Ralby concedes that he is not an expert "in the field of US/Iran relations." (Ex. 2 (Ralby Tr.) at 177:17-20.) Indeed, the term "Iran" does not appear anywhere on his curriculum

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

vitae or list of recent publications. (*See* Ex. 1 (Ralby Rpt.) at App'x B & C.) These shortcomings are fatal. *See Luviano*, 2017 WL 3017195, at *10 (barring certain testimony from expert with otherwise "impressive credentials" who was not "qualified to proffer expert testimony on the legal issues in question" in that particular case); *Blockchain Innovation*, 2024 WL 5483606, at *9 (proponent of expert's testimony must "show[] that the experience relates to issues in dispute such that the expertise would be helpful to the trier of fact") (citation omitted).

Primary Insurers, on the other hand, ***did*** retain an expert "in the field of US/Iran relations": Alan Eyre, a career diplomat with the State Department, the U.S. Army, and the intelligence community, with 40 years of experience in U.S.-Iran relations. He has worked directly with Iran in a diplomatic capacity and, based on a front-row seat to the interactions between these nations, can share the perspective of how the United States Government interacted with Iran during the relevant time periods (and whether the U.S. Government and the international community viewed its relationship with Iran as one of "war"). In rebutting Mr. Eyre's report, Dr. Ralby looks down his nose at Mr. Eyre's decades of service: "While Mr. Eyre has studied Iran extensively. . . he seems to have little to no familiarity with maritime security, maritime trade, shipping or naval warfare. . . . Just as a chiropractor would be of little value when diagnosing a heart condition, Mr. Eyre's opinions are of little value in diagnosing the context and meaning of maritime hybrid hostilities."[6] (Ex. 8 (Dep. Ex. P-292) ¶ 2.)

Dr. Ralby's maritime law and security expertise has no relevance to the issues raised by the Policy, which requires a review of whether the United States and Iran were at war at the time of the seizure of the *Advantage Sweet* or Iran's subsequent confiscation of Chevron's oil pursuant to court order. His background in international law and maritime security do not qualify him to testify about whether the United States and Iran were at war, which is instead a question of international relations.

---

[6] Mr. Ralby is right that Mr. Eyre cannot provide the meaning of "maritime hybrid hostilities." As noted above, no one – besides Dr. Ralby himself – can do so because that is a term that Dr. Ralby invented. (Ex. 2 (Ralby Tr.) at 65:24-66:9.)

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

**D. Dr. Ralby Improperly Offers Legal Conclusions on Ultimate Issues**

Finally, Dr. Ralby's opinion that Iran's conduct toward the *Advantage Sweet* constituted a "warlike taking at sea" improperly offers a legal conclusion on the ultimate issue in this case, contrary to applicable law. *SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 902 (N.D. Cal. 2022). Experts "may not offer legal conclusions that are solely within the Court's or the fact-finder's province." *Dold v. Snohomish Cnty.*, No. 2:20-CV-00383-JHC, 2023 WL 123335, at *1 (W.D. Wash. Jan. 5, 2023) (citations omitted). An expert's efforts to interpret the terms of a contract are especially improper where "the interpretation would go to the ultimate issue" of whether a party breached a contract. *See Synergy*, 2023 WL 3319218, at *6.

Ralby's opinion seeks to usurp the Court's fact-finding role in determining whether the facts surrounding Iran's seizure of the vessel and later expropriation of Chevron's crude oil fall within the language of the Policy. There is little, if any, daylight between Ralby's "warlike taking at sea" opinion and the coverage requirements of the War Risks form (requiring "warlike operations"). The Court is more than capable of hearing and considering the undisputed facts and reaching its own conclusion about which of those facts align with the Policy language.

## VI. CONCLUSION

For the reasons set forth above, the Primary Insurers respectfully request that the court: (A) grant its Motion; (B) preclude Ralby from offering the opinions set forth above; and (C) grant the Primary Insurers such other and further relief as the Court deems appropriate.

Dated: April 20, 2026

DENTONS US LLP

By: */s/ Shari L. Klevens*
Shari L. Klevens
Alanna Clair

- and -

MOUND COTTON WOLLAN & GREENGRASS LLP

By: */s/ Jonathan Gross*
Jonathan Gross

- and -

GRASSO MOELLER LLC

By: /s/ Joseph Grasso
Joseph Grasso

Attorneys for Plaintiffs/Counterclaim Defendant ZURICH AMERICAN INSURANCE COMPANY, LIBERTY MUTUAL INSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET, SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381